IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-155-FL

| UBS FINANCIAL SERVICES, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| ROBERT ZIMMERMAN, | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's supplemental motion for preliminary injunction, which the court construes as a motion for temporary restraining order ("TRO"). (DE 8). Also before the court is defendant's motion for an extension of time in which to file responses and an answer. (DE 12). For the reasons that follow, the court grants plaintiff's motion for TRO and grants in part and denies as moot in part defendant's motion for an extension of time.[1]

## BACKGROUND

On January 6, 2016, defendant filed with the Financial Industry Regulatory Authority ("FINRA") a revised Statement of Claim (the "SOC") naming Charles Schwab & Company, LLC ("Schwab") and plaintiff as respondent parties and requesting arbitration (the "Arbitration"). (Compl., DE 1, ¶1; Revised Statement of Claim ("SOC"), DE 2-3).[2] As relevant here, defendant

---

[1] On May 4, 2016, defendant filed a motion to dismiss, which, in pertinent part, challenges the court's subject matter jurisdiction. (See DE 14). The court need not address the merits of defendant's motion at this juncture, where "the District Court has the power to preserve existing conditions while it [is] determining its own authority to grant injunctive relief." United States v. Mine Workers of Am., 330 U.S. 258, 293 (1947).

[2] Presumably, defendant filed a first SOC at some point. However, that document is not in the record.

asserts against plaintiff claims for: 1) fraud; 2) breach of fiduciary duty; 3) negligence; 4) breach of contract; 5) negligent misrepresentation; 6) omission; 7) unsuitability; 8) over concentration; 9) control person liability; 10) alter ego liability; and 11) failure to supervise under federal securities law. (SOC, 3).

According to the SOC, defendant, through his broker, Schwab, was invested in a certain investment product underwritten by plaintiff. Plaintiff, with the assistance of brokers, like Schwab, allegedly sold that product knowing it was substantially overvalued. (Id., 4). Since defendant purchased the product at issue, its value allegedly has declined approximately 50%, a result of its alleged overvaluation. (Id.). Plaintiff also allegedly misrepresented itself in the product's prospectus, among other items of literature, by failing to disclose certain criminal conduct, previous law suits against it, Department of Justice investigations, and the "funneling" of "non-directed" trades to certain brokerages, including Schwab. (Id., 6–7).[3]

On February 9, 2016, plaintiff moved to dismiss the Arbitration on the ground that defendant was not its "customer," a designation necessary to compel a financial institution to arbitration in the absence of a written agreement to arbitrate. (DE 2-6). By letter dated March 31, 2016, the Director of FINRA Dispute Resolution denied plaintiff's motion to dismiss without opinion. (DE 2-7).

On April 7, 2016, plaintiff filed suit seeking a declaratory judgment as to the arbitrability of the claims asserted against it in the Arbitration, as well as a permanent injunction. Also on April 7, plaintiff filed a motion for preliminary injunction. (DE 2). Therein, plaintiff argues that pursuant to the relevant FINRA Arbitration Rule, Rule 12200, defendant does not have the power to compel plaintiff to arbitrate the claims raised in the SOC because defendant is not plaintiff's "customer."

---

[3] Inasmuch as defendant raises claims against Schwab, each of them are grounded in Schwab's failure to alert him to the risks posed by investing in the product. (SOC, 8).

Plaintiff contends that defendant is not its "customer" because defendant never purchased from it investment banking or securities commodities or services, but, rather, that, with regard to the product at issue, defendant purchased those services exclusively from Schwab.

On April 18, 2016, plaintiff filed proof of service. (DE 7). On April 22, 2016, plaintiff filed the instant supplemental motion for preliminary injunction. Plaintiff requests an expedited briefing schedule and an expedited hearing on its first motion for preliminary injunction, where FINRA has "requested that the parties to the Arbitration submit an arbitrator ranking form and disclosure report no later than May 3, 2016." (Pl.'s Supp. Motion & Br., DE 8, 1; see also Declaration of David L. Goldberg, DE 8-1 ¶3). In light of the fact that defendant has not entered an appearance, plaintiff served its supplemental motion for preliminary injunction on defendant by mail. (DE 9).

On April 26, 2016, defendant filed a pro se motion for an extension of time in which to file an answer, respond to plaintiff's motion for preliminary injunction, and respond the instant supplemental motion for preliminary injunction. (DE 12). Defendant contends that good cause exists to grant the motion where he needs additional time to obtain counsel and requests an extension of all deadlines up to and including May 30. Plaintiff opposes that motion where defendant's requested relief, if granted in full, likely would require it to submit to arbitration.

**COURT'S DISCUSSION**

A.  Standard of Review

The issuance of a TRO is governed by the same standards applicable to preliminary injunctions. See Fed. R. Civ. P. 65. To obtain a TRO plaintiff must make a "clear showing" "[1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an

3

injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 20, 22 (2008). Injunctive relief is an "extraordinary remedy" and to obtain it, plaintiff must satisfy each of the four factors. Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (2009), vacated 559 U.S. 1089, reinstated in pertinent part 607 F.3d 355 (4th Cir. 2010).

B.   Analysis

   1.   Likelihood of Success on the Merits

The court finds that the first Winter factor weighs in favor of granting the TRO, because plaintiff is likely to succeed on the merits of its declaratory judgment claim. Defendant and plaintiff do not have a contractual arbitration agreement. Moreover, defendant is not plaintiff's "customer," and thus is not entitled to compel arbitration with plaintiff, because defendant has not purchased "commodities or services" from plaintiff in the course of its "investment banking . . . [or] securities" business. UBS Fin. Servs. v. Carilion Clinic, 706 F.3d 319, 325 (4th Cir. 2013).

In the absence of an arbitration agreement, FINRA Rule 12200 allows "a party . . . [to] compel a FINRA member to participate in FINRA arbitration if: (1) the party is a 'customer' of the FINRA member; and (2) there is a dispute between the 'customer' and the FINRA member." Morgan Keegan & Co. v. Silverman, 706 F.3d 562, 564 (4th Cir. 2013); see also FINRA Arbitration Rule 12200, available at http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4106 (last visited May 9, 2016). A "customer" is a person or entity that is "not a broker or dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities," namely "investment banking and the securities business." UBS, 706 F.3d at 325.

4

Plaintiff likely will succeed on its declaratory judgment claim because defendant, in the SOC, does not allege that he purchased securities from plaintiff. In the absence of an allegation that defendant purchased investment banking or securities commodities or services from plaintiff, defendant is not plaintiff's "customer" entitled to compel plaintiff to arbitrate under FINRA Rule 12200. See Morgan Keegan, 706 F.3d at 567; Carilion Clinic, 706 F.3d at 325.

Instead of alleging any relationship centered on the buying of investment banking or securities commodities or services from plaintiff, defendant, in the SOC, suggests that he qualifies as plaintiff's "customer" under a more expansive reading of that term. In particular, defendant suggests that he is plaintiff's "customer" because 1) plaintiff manipulated the value of the product in which defendant was invested; 2) plaintiff worked together with Schwab to manipulate the value of that product; and 3) plaintiff published false or misleading literature, including false or misleading prospectuses, which it then sent to both Schwab and defendant. Plaintiff's arguments are unconvincing. The Fourth Circuit already has rejected such an expansive reading of the term "customer." See Morgan Keegan, 706 F.3d at 567.

For example, inasmuch as defendant alleges that plaintiff engaged in general misconduct, either on its own or as a result of "contact between" plaintiff and Schwab, that allegation does not substantiate defendant's implicit claim that he is plaintiff's "customer." Id. Defendant does not have an account with plaintiff, but, rather, is invested in securities underwritten by plaintiff through his Schwab brokerage account. Such an attenuated connection between plaintiff and defendant does not align with "the common understanding of the term 'customer,'" as required by FINRA Rule 12200. See id. Moreover, insofar as defendant contends plaintiff sent his broker false or misleading literature, that too does not satisfy the common understanding of the term "customer." Id.

5

Defendant's SOC also suggests that plaintiff contacted him directly with false or misleading publications. However, that contention is of no moment. Plaintiff still is likely to prevail on its declaratory judgment claim because, under the standard announced in Morgan Keegan and Carilion Clinic, that allegation falls outside the "common understanding of the term 'customer.'" Id. The definition of "customer" is focused on the investor's actions, namely the purchasing of goods or services, rather than the actions of the FINRA member. See id.; see also Carilion Clinic, 706 F.3d at 325. The fact that plaintiff provided prospectuses, or other literature, to defendant has no bearing on whether defendant purchased from plaintiff investment banking or securities commodities or services. See id. In addition, were the court to hold that an underwriter transforms each investor to which it supplies a prospectus into its "customer," simply by the act of supplying such prospectus, that holding would unduly expand the scope of Rule 12200. See Bensadoun v. Jobe–Riat, 316 F.3d 171, 177 (2d Cir. 2003); see also Morgan Keegan, 706 F.3d at 567.

In sum, where defendant is not plaintiff's "customer," the first Winter factor tips in favor of granting the TRO.

    2.    Irreparable Harm

The court finds that plaintiff has carried its burden as to the second Winter factor, irreparable harm. "Courts have held that the harm suffered by an individual who is forced to arbitrate claims it did not agree to arbitrate is per se irreparable because it forces an individual to expend resources it cannot later recover." Morgan Keegan & Co. v. Louise Silverman Trust, No. 11-2533, 2012 WL 113400, *5 (D. Md. Jan. 12, 2012), aff'd sub nom., 706 F.3d 562 (4th Cir. 2013) (collecting cases); accord Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003); Morgan

6

Keegan & Co. v. Johnson, No. 2:11-CV-502, 2011 WL 7789796, *3 (E.D. Va. Dec. 22, 2011); UBS Secs. LLC v. Voegeli, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010).

    3.      Balance of Equities

The balance of equities tips in favor of granting the TRO. First, defendant is not plaintiff's "customer" and thus has no right to compel arbitration under the applicable FINRA rule. Second, it would be inequitable to force plaintiff to submit further to the Arbitration, and expend the additional resources necessary to arbitrate defendant's claims, when defendant has no right to compel the Arbitration under the applicable rule. See Sagepoint Fin., Inc. v. Small, No. 15-CV-571, 2015 WL 2354330, at *6 (E.D.N.Y. May 15, 2015) (balance of equities tips in favor of injunction where defendant was not plaintiff's "customer," among other things); Johnson, 2011 WL 7789796, at *7. Cf. UBS Fin. Servs., Inc. v. Carilion Clinic, 880 F. Supp. 2d 724, 733–34 (E.D. Va. 2012) (balance of equities tips in favor of defendant where defendant is FINRA member plaintiff's "customer.").

This is true notwithstanding the policy of the federal courts to favor arbitrability. The issue before the court is whether defendant has a legal right to compel plaintiff to arbitrate. That threshold issue is reserved for the court. Small, 2015 WL 2354330, at *6. In any case, a court order temporarily restraining defendant from participating in arbitration of his claims against plaintiff will not deprive defendant of the ability to arbitrate against his broker, Schwab.

    4.      Public Interest

The public interest favors a TRO. Denying a TRO effectively would force plaintiff to submit further to the Arbitration, a proceeding that, as discussed above, defendant has no right or power to compel against plaintiff.

7

C.     Other Rule 65 Requirements

Next the court comments briefly on the requirements of Rule 65(b). First, although Rule 65(b) ordinarily requires the movant to certify "efforts made to give notice [to the opposing party] and the reasons why it should not be required," Fed. R. Civ. P. 65(b)(1)(B), that provision is inapplicable here. Specifically, Rule 65(b)(1)(B) applies only where the opposing party is "without written or oral notice." Id. As such, plaintiff's return (DE 7), taken in conjunction with the certificate of service appended to plaintiff's supplemental motion for preliminary injunction (DE 9), evidence that defendant has been served with all relevant documents in this matter, and, thus, has notice. See Charles A. Wright et al., Fed. Prac. & Proc. § 2951 (3d ed.). In any case, defendant also has filed two motions of his own, one seeking more time to respond to plaintiff's motion for preliminary injunction and the instant supplemental motion for preliminary injunction, and another where defendant discusses at length the substance of plaintiff's motion for preliminary injunction. These filings satisfy the court that defendant has received written notice of the instant motion.

Second, the court enters this order without a hearing in light of the difficult circumstances of this case. In particular, defendant has requested additional time to respond to plaintiff's motion for preliminary injunction, a request which the court grants in part herein. However, were the court to grant defendant's requested extension of time without taking action on the instant motion in the form of a TRO, the court has serious doubts as to whether plaintiff's motion for preliminary injunction could be heard fully before the Arbitration commenced in earnest.

Third, and finally, as with any order entered under Rule 65, plaintiff is required to pay to the clerk of court "an amount that the court considers proper to pay the costs and damages sustained by

8

any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Accordingly, plaintiff is directed to pay to the clerk of court $1,000.00 as security within 48 hours after the entry of this order.

D.      Defendant's Motion for Extension of Time

Defendant requests an extension of time in which to file an answer and responses to plaintiff's motion and supplemental motion for preliminary injunction. (DE 2, 8). For good cause shown, the court GRANTS the motion in part. Defendant shall have up to and including May 30, 2016, to file an answer and response to plaintiff's motion for preliminary injunction. (DE 2). Nevertheless, where the court herein has construed plaintiff's supplemental motion for preliminary injunction as one for TRO, (DE 8), and has granted the motion, defendant's motion for extension of time is DENIED AS MOOT in remaining part.

## CONCLUSION

Based on the foregoing, the court CONSTRUES plaintiff's supplemental motion for preliminary injunction (DE 8) as a motion for temporary restraining order and GRANTS the motion. **Defendant hereby is RESTRAINED from proceeding against plaintiff in FINRA arbitration number 15-03460, <u>Zimmerman v. UBS Financial Services, Inc. and Charles Schwab and Company</u> for a period of 14 days, until May 23, 2016, at 9:20 a.m**. Prior to expiration of that 14 day period, plaintiff may reapply for a TRO for good cause shown. Plaintiff is DIRECTED to pay to the clerk $1,000.00 as security within 48 hours after the entry of this order. The court HOLDS IN ABEYANCE ruling on plaintiff's motion for preliminary injunction (DE 2). Defendant shall have up to and including May 30, 2016 to file an answer to the complaint and a response to

plaintiff's motion for preliminary injunction. A notice setting a hearing on plaintiff's motion for preliminary injunction will follow.

SO ORDERED, at 9:20 a.m., on this the 9th day of May, 2016.

                                                  LOUISE W. FLANAGAN
                                                  United States District Judge