FILED

MAY 2 7 2016

JULIE RICHARDS JOHNSTON, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

Case No. 5:16-CV-155-FL

UBS FINANCIAL SERVICES INC.,
Plaintiff,

v.

ROBERT ZIMMERMAN,
Defendant.

### DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT SEEKING
### INJUNCTIVE RELIEF
### AND COUNTERCLAIM AND JURY TRIAL DEMAND

Defendant Robert Zimmerman hereby answers the Complaint for Injunctive and

Declaratory Relief ("Complaint") in the above-captioned action using the same paragraph

numeration as that used in the Complaint. Any allegation not specifically admitted

hereafter is denied.

### Factual Introduction and Allegations

Defendant thanks this Court for the extension of time it granted to him to find an

attorney to represent him in this action. Defendant discussed that matter with three law

firms and each abstained. Therefore, in order to submit this Answer within the timeframe

established by this Court, Defendant submits this Answer to the Complaint without

representation and asks the Court's indulgence for whatever insufficiencies it may

contain and to add and/or amend additional counterclaims.

1

On or about November 14, 2014 UBS replaced its Prospectus for the security it calls CEFL with a thirty-three-page document they call "PRODUCT SUPPLEMENT (To Prospectus dated November 14, 2014)." When Defendant telephoned UBS to ask for a Prospectus he was told that the Product Supplement replaced the Prospectus and was available, and still is, at the UBS website for CEFL. Hereafter, Defendant will repeatedly refer to that thirty-three-page Product Supplement as Prospectus. Defendant in this Answer to the UBS Complaint relied entirely on the thirty-three-page document for his investments in the UBS security called CEFL, for his Answer to the UBS Complaint and for his Counterclaims which follow.

Plaintiff UBS Financial Services Inc. (UBS) a long-standing member of the Financial Industry Regulatory Authority (FINRA), seeks extraordinary relief. It has asked this Honorable Court for a preliminary injunction to prevent Defendant Robert Zimmerman from arbitrating a claim he has lodged against UBS with FINRA, FINRA being the very forum created by Congress to resolve disputes between all firms engaged in the securities industry and the public. Authorized under the auspices of the Securities Exchange Act of 1934, FINRA is the primary forum for resolving disputes between firms engaged in the securities industry and the public.

As a longstanding member of FINRA, and one that has arbitrated and won many customer disputes in the FINRA forum, UBS is contractually bound by FINRA Rule 12200, which provides that "parties must arbitrate under the FINRA Code if requested by the customer and if the dispute arises in connection with the business activities of the member..." Over the years, the FINRA arbitration forum has been instrumental in heling

2

to thousands of disputes between FINRA's member firms and the public. Moreover, in two letters the Director of FINRA has already first denied a UBS request to abstain from the arbitration of Defendant's claim and then ruled that the FINRA forum was "appropriate" for arbitration the dispute between UBS and the Defendant. (See Exhibit "2").

With its motion for a preliminary injunction, UBS is engaged in what amounts to flagrant and frivolous forum shopping, seeking to circumvent FINRA without demonstrating good cause or any cause whatsoever, seeking instead to bully a relatively defenseless adversary into submission by substituting a federal lawsuit for arbitration.

UBS' parent company is Swiss bank that specializes in helping wealthy people the world over from the IRS and other taxing authorities. Not well known is the fact that if UBS is not a criminal organization, it certainly comes pretty close. Over the years UBS has been sued hundreds, if not thousands, of times by investors and governments. Over the last decade, to settle claims of every financial crime imaginable (see Exhibit 3), UBS has paid out tens of billions of dollars. Importantly, none of this vast record of financial crime is disclosed in the thirty-three page UBS Product Supplement to Prospectus dated November 14, 2014 (hereafter Prospectus) for CEFL (see exhibit 1). In one single year, the year UBS initially sold the ETN CEFL to the Defendant and other unwary investors, UBS paid more than a billion dollars to settle claims of wrongdoing. Moreover, UBS employees have called the so-called UBS securities "crap and vomit."

UBS has been and may still be under investigation by the U.S. Department of Justice for possible manipulation of foreign exchange markets. UBS is under scrutiny by

3

France for helping wealthy people avoid taxes. Other instances of UBS financial chicanery include money-laundering, price fixing, denying Holocaust victims access to their funds, bid rigging, LIBOR manipulation, improper pricing of mutual funds (as claimed here), the sale of risky securities (as claimed here), misleading investors (as claimed here), creating an uneven playing field by providing for its preferred investors by giving them access to a "dark pool" alternative trading system, currency manipulation, sex discrimination, human rights abuses and other egregious conduct unbecoming a large international bank. One such investigation of UBS by the U.S. Department of Justice involves allegations of price fixing, illegally rigging markets, and criminal profiteering. Just how much longer UBS will be allowed to continue misleading and defrauding U.S. investors?

UBS, a Swiss corporation, is a giant banking conglomerate with global operations and numerous subsidiaries and affiliates including the Plaintiff UBS Financial Services, Inc. In contrast, the Defendant is a retired 75-year-old, living on a monthly Social Security allotment of $940 a month and a modest savings, most of which have been gobbled up by UBS with one of its latest schemes to mislead and defraud investors. Given the relative resources of the two parties, that UBS could claim that arbitrating its claim with the Defendant is preposterous, as is the UBS claim that a federal lawsuit instead of arbitration is in the "public interest" or that arbitration will lead to "irreparable harm," or that the "threatened injury" from arbitration to UBS outweighs the burden of a federal lawsuit is placing on the Defendant.

Black Letter Law demands that equity should not favor a repeat offender of the laws of the United States. As a "transcendent or extraordinary remedy," an injunction

4

"should not be lightly indulged in, but should be used sparingly and only in a clear and plain case." Kucera v. Dep't of Transp., 140 Wn2d 200, 209 995 P.2d 63 (2000). Any plaintiff seeking injunctive relief must prove (1) a clear legal or equitable right; (2) a well-grounded fear of immediate invasion of that right; and (3) that the acts complained of will result in actual and substantial injury unless enjoined. Tyler Pipe Indus. Inc. v. Dep't of Revenue, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982) (denying injunctive relief); see RCW 7.40.020. If UBS has failed to establish any one of these distinct requirements, the Court must deny the motion. Kucera, 140 Wn.2d at 210.

Moreover, Because the injunctive remedy involves equitable powers, the courts should balance the relative interests of the parties and, if appropriate, the interests of the public. *Id* at 792. For example, a court "should not issue and injunction when the harm it will do to a defendant is disproportionate to the damage caused a plaintiff by the action he asks be enjoined." Agronic Corp. of Am. V. deBough 21, Wn 4., 59, 464, 585 P.2d 821 (1978).

### **Jurisdiction and Venue**

The following five items are contained in Defendant's submitted Motion to Dismiss and are hereby incorporated by reference herein.

1. A federal court always has the authority to determine whether it has the jurisdiction to hear a particular case. United States v. Ruiz, 536 U.S. 622m 628 (2002) (citing United States v. Mine Workers of Am, 330 U.S. 258,291 (1947). Moreover, it is presumed that a cause lies outside of the jurisdiction of the federal

5

courts, and the burden of establishing the contrary rests with the party asserting jurisdiction. <u>Kokkonen v. Guardian Life Ins. Of Am.</u>, 511 U.S. 375, 377 (1994). See also Wright & Miller § 3522, pp. 103-05 "There is a presumption that a federal court lacks subject matter jurisdiction, and the party seeking to invoke federal jurisdiction must affirmatively allege the facts supporting it."

2. Plaintiff is invoking a preemptive federal defense as the basis of Plaintiff's Complaint. The declaratory-judgment seeking plaintiff should not be able to file a complaint that anticipates a federal defense of the coercive action. <u>Ne. Ill Reg'l Commuter R.R. Corp. v. Hoey Farina & Downes</u>, 212 F.3d 1010, 1014 (7th Cir. 2000). "If the plaintiff cannot get into federal court by anticipating what amounts to a federal offense to a state-law cause of action, he should also not be able to use the Declaratory Judgment Act to do so by asserting what is really a preemptive federal defense as the basis of his complaint." , it is well established that, in a declaratory judgment action, federal jurisdiction does not lie, 'if but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action." <u>City of Rome, N.Y. v. Verizon Communications</u>, 362 F.3d 168, 182 (2nd Cir. 2004) (quoting <u>Franchise Tax Bd</u>, 463 U.S.at 16.) See also, <u>Republican Party of Guam v. Gutierrez</u>, 277 F.3d 1086 (9th Cir. 2002) (discussing well-pleaded complaint rule and declaratory judgments.)

3. Federal jurisdiction is lacking because FINRA and Schwab are unnamed parties that are indispensable to the proceeding and its position on the issue in dispute must be considered. Federal Rule 19(a) requires a court to join a party that is

6

necessary to accord complete relief among the existing parties. Fed. R. Civ. P. 19(a)(1). Plaintiff has admitted that FINRA has denied its request to abstain from arbitrating the Defendants' dispute with Plaintiff, and is thus a necessary party to Plaintiff's pursuit for relief from FINRAs' ruling. Schwab is a necessary party because it was Schwab that executed Defendant's investments and disinvestments with UBS and that had other questionable business dealings with UBS. Rule 19(a) requires a court to join a party that is necessary to "accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1). (See also <u>Sta-Rite Indus., v. Allstate Ins. Co.,</u> 96 F.3d 281, 285 (7th Cir. 1996).

4.   As there is no amount in controversy in this Court, Plaintiff has failed to qualify for federal jurisdiction because the Defendant has offered to settle his dispute in the FINRA forum with Plaintiff for a sum less than the $75,000 required by 28 U.S.C. § 1332. Moreover, UBS has entirely failed to raise a substantial issue of federal jurisdiction or any other substantial issue. UBS Financial has no substantial connection to North Carolina because it is not a North Carolina corporation and Defendant's dispute with UBS Financial was brought and is being managed by FINRA from its headquarters in New York City. Thus UBS' efforts to bar the arbitration of Defendant's claim are misconceived and misplaced. If UBS truly seeks to bar arbitration of Defendant's Claim, it should seek an injunction against FINRA in New York and not against the Defendant, a resident of North Carolina.

5.   Plaintiff has, as yet, failed to serve its Summons and Complaint on the Defendant and has submitted zero proof of such service. To the best of his recollection,

Defendant first learned that UBS had filed a Complaint against him via a letter dated April 8, 2016 with a copy of the Complaint attached that UBS mailed to FINRA, the subject of which to inform FINRA that UBS had filed the Complaint. UBS has alleged that the Complaint was served on Defendant by a FEDEX delivery person delivering such to Defendant and Defendant does remember being approached with a package by a FEDEX delivery person, but since Defendant was not expecting a package from anyone, Defendant declined acceptance of the package and the delivery person took it away with him. Since then, Defendant has received several follow-up documents send by UBS by means of FEDEX because by then he was aware of the existence of the Complaint and was awaiting its delivery which never happened. Defendant was never served or mailed a waiver of service of the Summons and Complaint and believes UBS was attempting an end run around personal service because it was in a hurry to block Defendant from pursuing his claim against it in the FINRA forum, Moreover, Defendant has requested a copy of the Proof of Service or Certificate of Service from UBS attorney David Goldberg but as of this writing has not received such proof of service or certificate of service. Moreover, the two citations by UBS at paragraph 7. of its Memorandum of Law dated May 20, 2016 in support of its proof of service are inappropriate. The first cited citation 26 U.S.C. at 7502 deals only with matters involving the Internal Revenue Service. The second citation 223 N.C. App. 412, 427 S.E.2d 650, 660 (N.C. App. 2014) does find that delivery to a home address is sufficient, but that delivery must be proved with a receipt from the deliverer, in this case FEDEX, that the delivery was received by a person at

8

the home address or left at the home address, which, with regard to the purported

delivery of the Summons and Complaint has not been substantiated.

## First Affirmative Defense

Plaintiffs are not entitled to injunctive or declaratory relief sought since the

FINRA's Director has denied a UBS request to withdraw from the arbitration (see

Exhibit 2). FINRA is the largest non-governmental regulator of broker-dealer firms doing

business in the U.S. and administers nearly all of the securities related arbitration in the

U.S. FINRA has a uniform set of rules for arbitrating disputes between FINRA members

and their customers designed to provide fairness, procedural protection and access to

remedies that customers, as here, otherwise would need to seek in court. Among these

rules is Rule 12200, which requires FINRA members, like UBS, at a customer's request

to arbitrate disputes that arise in connection with their **"business activities."** Clearly, the

issuance and sale of its own securities to Defendant was a "business activity." The fact

that Defendant did not have a brokerage account with UBS does not negate the fact that

when Defendant purchased UBS's own securities and paid numerous monthly

management/financing fees to UBS and received numerous monthly dividends from UBS

singularly and together what must be construed as "business activities."

**Tellingly, in its Prospectus (see Exhibit 1, page 30, lines 10-13) UBS uses the term**
**"customer" to describe its CEFL shareholders.** Moreover, in its Prospectus for CEFL

UBS reserved the right to recall its CEFL security. (See exhibit 1, especially pages 1-2, 7,

9-10, 12 and 25). No recall was ever consummated, but the fact that UBS could recall

CEFL shares from the Defendant is more proof that Defendant was a customer of UBS.

9

## Second Affirmative Defense

Plaintiffs' are not entitled to injunctive or declaratory relief sought since the relief sought is contrary to public policy. FINRA was formed in 2007, pursuant to Section 15A of the Securities Exchange Act of 1934 through the consolidation of the National Association of Securities Dealers and New York Stock Exchange Regulations, Inc., the regulatory authority of the Security Exchange Commission, affectionately known as the SEC, (see 15 U.S.C.A. at 780-3). FINRA falls under the regulatory authority of the SEC, but is a private self-regulatory organization that exercises comprehensive oversight over all securities firms that do business with the public. (See UBS Fin. Servs. Inc. v. W. Va. Univ. Hosps., Inc., 660 F.3d 643, 648 (2nd Cir. 2011). Clearly seeking to sidestep FINRA runs counter to public policy. Plaintiffs' have not shown that they are entitled to injunctive or declaratory relief because they have made no showing that proceeding with arbitration in the FINRA forum would inconvenience, damage or injure them.

## Third Affirmative Defense

Plaintiffs' have not shown that they are entitled to injunctive or declaratory relief because they have not shown that proceeding with arbitration in the FINRA forum would inconvenience, damage or injure them in any way. Conversely, the Defendant has been and will be significantly damaged if enjoined from arbitrating his dispute with UBS in the FINRA forum. The damages this 75-year-old Defendant has already accrued and will continue to accrue if enjoined from arbitration with UBS is the result of the time and costs inherent in a federal proceeding compared a FINRA proceeding.

## Fourth Affirmative Defense

Plaintiffs' request for relief is barred, in whole or in part, by the doctrine of unclean hands. As set out in the FINRA SOC, it is undisputed that UBS has plead guilty to numerous financial crimes and settled numerous other financial crimes (see Exhibit 3). That they would come to this Court seeking injunctive relief against arbitrating a dispute with a former shareholder shakes the very foundation of our legal system.

## Fifth Affirmative Defense

Plaintiffs' request for relief is barred, in whole or in part, by the doctrine of preemption, the invoking of a preemptive federal defense as the basis of Plaintiff's Complaint.

## Sixth Affirmative Defense

Plaintiffs' are not entitled to injunctive or declaratory relief sought since they have failed to exhaust other remedies. Plaintiffs could have proceeded with arbitration or settled the dispute with the Defendant.

## Seventh Affirmative Defense

Plaintiffs' are not entitled to injunctive or declaratory relief sought since they have not met the necessary burden of prove that the Defendant was not engaged in business activities with them and thus a "customer" of theirs as the term "customer is defined in FINRA Rule 12200.

## Eighth Affirmative Defense

11

Plaintiffs' are not entitled to injunctive or declaratory relief sought since they have failed to serve Defendant with the Complaint. Defendant has requested a copy of the Proof of Service or Certificate of Service from UBS and has yet to receive such copy.

## Ninth Affirmative Defense

Plaintiffs' are not entitled to injunctive or declaratory relief sought since they have failed to enjoin indispensable parties. Surely FINRA and possibly Charles Schwab & Co., Inc. are indispensable parties.

## Tenth Affirmative Defense

Plaintiffs' are not entitled to injunctive or declaratory relief sought since they have been unjustly enriched by Defendant's losses from his investment in the UBS security called CEFL.

## Eleventh Affirmative Defense

With respect to all or some of the allegations, the Defendant maintains that Complaint fails to state a claim upon which relief can be granted and provides answers to each of the allegation in the Complaint using the identical paragraph numbers used in the Complaint.

1. Paragraph 1 contains Plaintiff's characterization of the Complaint and/or conclusions of law which are erroneous and/or to which no response is required. To the extent a response is required, Defendant denies those characterization and/or conclusions of law.

2. Defendant admits Paragraph 2.

3. Paragraph 3. Defendant admits he maintained a brokerage account at Schwab and that Schwab encouraged him to purchase certain securities by offering him margin loans and that Schwab failed to disclose certain conflicts of interest or supervise Defendant's brokerage account. Defendant denies that Schwab made unsuitable recommendations to him, and all else that remains of Paragraph 3 is denied.

4. Defendant admits Paragraph 4 except for the part where it states that "Defendant allegedly purchased from Schwab." Instead Plaintiff admits he used Schwab as a broker to purchase a UBS issued product called CEFL and in so doing established a long-term customer relationship (over two years) with UBS, receiving numerous monthly dividends directly from UBS and directly paying UBS monthly management fees/and or finance fees.

5. Defendant denies Paragraph 5 and instead admits that he has established a contractual relationship with UBS by virtue of the UBS contractual relationship with FINRA, the SEC, the NYSE and NASDAQ. Defendant also admits having received numerous monthly dividends from UBS and has paid UBS numerous monthly management fees/and or finance fees, which establishes a form of brokerage account with UBS.

6. Defendant denies Paragraph 6 except for admitting that he is a long-term customer of UBS as the term "customer" has been defined by FINRA in Rule 12200 and this Circuit in UBS Fin. Servs., Inc. v. Carillion Clinic, No. 12-128 (4th Cir. Jan. 23, 2013) and Morgan Keegan & Co. v. Silverman, No. 12-1208

13

(4th Cir. Feb. 4, 2013). In <u>Carillion,</u> as here, UBS sought to enjoin the arbitration, declaring that Carillion was not a "customer" within the meaning of FINRA Rule 12200 because that rule was intended to protect investors rather than issuers such as Carillion. The Fourth Circuit rejected this argument on the grounds that: (a) the ordinary meaning of "customer" includes all products offered by the company, and (b) nothing in the FINRA rules limit "customers" to only those persons who maintain a brokerage account with UBS. Thus, by purchasing underwriting and auction services from UBS, Carillion was a customer of UBS for purposes of FINRA Rule 12200.

Several weeks later in <u>Morgan Keegan,</u> the Fourth Circuit again addressed the definition of "customer" under FINRA Rule 12200. Defendants' in that case invested in bond funds that were distributed and underwritten by FINRA member Morgan Keegan. The Defendants, did not purchase the bond funds directly from Morgan Keegan, but rather on the secondary market through their brokerage account at Legg Mason. The value of the funds fell substantially causing the defendants to lose money. The defendants initiated FINRA arbitration proceedings against Morgan Keegan, alleging that Morgan Keegan failed to disclose information about the high risk nature of the funds,

Morgan Keegan sought to enjoin the FINRA arbitration on the grounds that the defendants were not its "customers" under FINRA Rule 12200 and therefore not entitled to demand arbitration. The Fourth Circuit, applying the definition of "customer" from the prior UBS case, held in Morgan Keegan's

14

favor on the grounds that merely having "a remote association with alleged misconduct is insufficient to create a customer relationship for purposes of FINRA Rule 12200."

Together, these cases show that in the Fourth Circuit a "customer" for purposes of FINRA arbitration rules must have a direct relationship with the securities firm at issue, but once such a relationship is established the right to arbitrate is broad enough to cover disputes relating to commodities or services offered by a securities firm. Here there was a many-pronged direct relationship between UBS and the Defendant, (1) the securities purchased by the Defendant from UBS were the securities of UBS itself and not of some other firm they were underwriting; (2) UBS directly distributed numerous monthly dividends to the Defendant; (3) UBS directly extracted numerous management/financing fees from the Defendant over an approximately two-year period, which, singularly and together, were more than sufficient to establish a long-term "customer" relationship between UBS and the Defendant (see Exhibit 1, especially page 23); and (4) UBS posted its Prospectus on a website for all the world to see, a Prospectus that intentionally and recklessly failed to disclose significant facts, such as UBS's extensive history of financial crimes (see Exhibit 3), including the rigging of LIBOR, the interest rate from which many global interest rates are set.

7. Defendant admits in part and denies in part Paragraph 7. Defendant admits that FINRA Rule 12200 obligates UBS, as a member of FINRA (a membership that

15

is compulsory), to arbitrate disputes with its customers. Defendant denies the inference in Paragraph 7 that Defendant is a "non-customer" of UBS and not entitled to arbitrate his dispute with FINRA.

8. Defendant denies Paragraph 8 and incorporates by reference Paragraphs 3-7, as above.

9. Defendant denies Paragraph 9 and incorporates by reference Paragraphs 3-8, as above.

10. Paragraph 10 contains only what is Plaintiff's sole prayer for relief from this Court and to that extent Defendant admits that Plaintiff has sought to use this Court to enjoin Defendant's arbitration against UBS.

11. Defendant is without sufficient knowledge to admit or deny Paragraph 11.

12. Defendant admits that he is the sole claimant in his FINRA arbitration proceeding with UBS, and joyfully admits that he is a resident of North Carolina.

13. 14. 15. With regard to Paragraphs 13. 14. And 15, to the extent that these paragraphs contain conclusions of law, no response is required except to note that this Court has as yet not ruled on Defendant's Motion to Dismiss, which is based on jurisdictional considerations and which is incorporated by reference with this Answer to Plaintiff's Complaint. If there are any other allegations raised in 13., 14. and 15. Defendant is without sufficient knowledge or information to form a belief as to the truth of those allegations.

16. Defendant admits Paragraph 16 and adds that UBS is a long-standing member of FINRA and that UBS seeks to prevent Defendant from arbitrating a claim he has

lodged against UBS with FINRA, which was created by Congress under the auspices of the Securities Exchange Act of 1934 as the primary forum for resolving disputes between firms engaged in the securities industry and the public. Moreover, nowhere in its Complaint does UBS explain how it would be damaged by arbitrating Defendant's dispute with it.

Moreover, the courts of the Fourth Circuit have ruled, that a FINRA customer is "one who is not a broker or a dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities. It is undisputed that the Defendant has purchased both commodities in the form of ETNs from UBS using Charles Schwab & Co., Inc. to effect those purchases. It is undisputed that Defendant has received numerous monthly dividends directly from UBS It is undisputed that Defendant paid numerous monthly management/financial fees to UBS. It is undisputed that Defendant was induced to purchase the securities he purchased from UBS based on the Prospectus UBS posted on its website (see Exhibit 1), a Prospectus that failed to disclose UBS's extensive involvement in financial crimes. Moreover, it is undisputed that UBS is a FINRA member firm, legally bound to use FINRA as a neutral forum to arbitrate any dispute that may arise between itself and its customers.

In two recent cases involving the definition of what is and what is not a "customer" of a FINRA member securities firm, this Court has ruled that UBS was not likely to succeed on the merits because it is obligated to participate in FINRA arbitration." See UBS Fin. Servs., Inc. v. Carillion Clinic, --F.3d--, 2013 WL 239051, at *8-7 (4th Cir. Jan. 23, 2013). The Courts of the Fourth Circuit have also determined, as have courts in the

Eighth and Second Circuits in similar cases, that Carillion Clinic was a customer within the meaning of FINRA Rules and could demand arbitration, and therefore affirmed the district court's denial of the plaintiff's motion for a preliminary injunction. *Id.* At *6-7. See also UBS Fin. Servs. Inc. v. W. Va. Univ. Hosps. Inc. 760 F. Supp 2d 373, 379. Moreover, in J.P. Morgan Secs. Inc. v. La. Citizens Prop. Ins. Corp., 712 F. Supp 2d 70, 78-79 (S.D.N.Y. 2010), cited the Second Circuit's ruling that "any ambiguity in the meaning of the term "customer" should be construed in favor of arbitration."

This Court's recent decisions are consistent with other courts' interpretation of "customer" in fact-based scenarios nearly similar to that presently before the Court. See Goldman Sachs & Co. v. City of Reno, No. 3:12-cv-00327-RCJ-WGC, 2012 WL 5944966, at "7 (D. NEV., Nov. 26, 2012) ("[T}he FINRA member…has provided service directly related to the securities themselves." Here, those services include the administration of the security, the setting and continuous resetting of the price of the security, the administration of the index that helps set the value of the security, the payment of dividends for that security and the extraction of monthly fees for the administration of that security.

The issuance of a preliminary injunction by a federal district court is considered an extraordinary and drastic remedy which is not to be granted unless the moving party establishes the burden of persuasion as to four requisites: (1) Irreparable harm will ensue if the injunction is not granted; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) if issued, the injunction would not be adverse to the public interest; and (4) it is likely that the moving

party will succeed on the merits. As set out below, UBS has entirely failed to establish any of these four requisites and should not be granted a preliminary or any other injunction.

(1) **Irreparable harm:** UBS states it will suffer "irreparable harm" if this Court does not rescue it from the throes of arbitrating Defendant's claims. But, UBS fails to provide any facts to support their allegation that they will suffer "irreparable harm." That failure in and of itself is fatal to the UBS request for injunctive and declaratory relief. Therefore, such relief should be denied on that ground alone. In order to obtain a preliminary injunction, the moving party must show that "the harm to plaintiff in the absence of a preliminary injunction outweighs the potential harm that granting a preliminary injunction may cause the defendant." ASICS Corp. v. Target Corp., 282 F.Supp. 2d 1020, 1031 (D.MINN. 2003).

(2) **The threatened injury:** UBS has also entirely failed to show how the threatened injury to UBS by engaging in arbitration would outweigh the damage to Defendant if the injunction were granted, itself another fatal flaw in the UBS request for injunctive and declaratory relief.

(3) **The Public Interest:** Plaintiff has entirely failed to provide any showing that a granting of the injunction would not be averse to the public interest, another fatal flaw. In fact, with its Complaint UBS seeks nothing less than to shield itself from the public by forcing the public into the lengthy processes of the state and federal courts instead of the relatively inexpensive and neutral FINRA arbitration forum. FINRA was established by Congress for the specific purpose of providing a neutral forum for protecting the public's interest when a dispute arises between a

member of the public and a FINRA member firm. In <u>Moses H. Cone Mem'l</u> <u>Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 22 (1983) the court ruled that Congress has expressed a "clear intent, in the [Federal] Arbitration Act, to move the parties to arbitrate out of court and into arbitration as quickly and easily as possible."

(4) **Success on the merits:**  Plaintiff hangs its hat on is its erroneous unsupported conclusion that Defendant was not a "customer" of UBS and therefore UBS need not bother itself with arbitrating Defendant's dispute with it in the FINRA forum. For the following eleven factual reasons, that unsupported conclusion is erroneous.

1.  It is undisputed that over a two-year period, Defendant purchased the securities which are the subject of the SOC dispute not directly from UBS but from a brokerage firm UBS uses to distribute its securities. The securities (CEFL) that Defendant purchased from UBS were not securities UBS was underwriting for a non-UBS entity. Rather these were Exchange-Traded-Debt-Notes (ETNs) that UBS created for itself and those securities were then sold to the public by UBS. The purchases of UBS ETNs by the Defendant over a two-year period were in and of themselves enough to qualify Defendant as a "customer" of UBS.

2.  It is undisputed that in its Prospectus (see Exhibit 1, page 30, lines 10-13) UBS uses the term "customer" to describe its CEFL shareholders.

3.  It is undisputed that over a two-year period, Defendant purchased the securities which are the subject of the SOC based on his reading of the UBS Prospectus for CEFL (see Exhibit1), and that that Prospectus failed to disclose

significant facts, such as UBS's extensive history of financial crimes, including the rigging of LIBOR, the interest rate from which many global interest rates are set and that in its Prospectus UBS states it will use (see Exhibit 1 at pages 22-24 and 32) to administer the very index that will establish the value of CEFL.

4. It is also undisputed that he clear language of FINRA Rule 12200 provides that parties must arbitrate a dispute under the FINRA Code if arbitration is requested by the customer of the member firm and the dispute arises in connection with the business activities of the member firm. Disputes excluded from arbitration in the FINRA forum are only those disputes involving the insurance business activities of a member that is also an insurance company. It is undisputed that UBS is not an insurance company and that the Defendant purchased securities created and distributed by UBS.

5. It is also undisputed that the Defendant received numerous monthly dividends directly from UBS, a fact that in and of itself establishes a long-term customer relationship between the Defendant and UBS.

6. It is also undisputed that the Defendant directly paid UBS numerous monthly management fees, another fact that in and of itself establishes a long-term customer relationship between the Defendant and UBS.

7. FINRA Rule 12200 states categorically that a member firm's customer as anyone who engages in business activities with a FINRA member firm that is neither a broker or a dealer. Defendant is neither a broker or a dealer, and, as above, has engaged in long-term business activities with UBS. 16 CFR 240.4.

21

defines a customer thusly: "A customer is any person who buys for resale directly from the seller, or the seller's agent or broker. In addition, a "customer" is any buyer of the seller's product for resale who purchases from or through a wholesaler or other intermediate reseller. The word "customer" …includes "purchaser."

8. It is also undisputed that throughout its Prospectus (see Exhibit 1), UBS calls the security CEFL that Defendant purchased from them a "product" and whether or not the Defendant purchased that product directly from UBS or from another brokerage firm, Defendant is just as much a customer of UBS as he would be a customer of General Motors if he bought a vehicle from one of its dealers or any other third party; moreover, were Johnson & Johnson to recall Tylenol or Chrysler to recall certain of its automobiles for product defects, neither company, nor would thousands of other companies have never maintained that those persons who had purchased their products were not their customers. Conversely, companies that recall their products do so for at least two significant reasons, those being a desire for maintaining the good will of their customers and the laws that govern product liability to protect the safety of their customers regardless of where those customers purchased their products. FINRA has already ruled that the Defendant is a "customer" of UBS.

9. It is also undisputed that UBS recklessly and intentionally fails to mention in its Prospectus (see Exhibit 1) that it stands to reap huge and unjust financial rewards as the price of CEFL falls, leaving UBS free to repurchase the

securities that it sold to an unsuspecting public for $25.00 a share at prices far less than $25 a share and pocket the difference. By this scheme, after lumping all of its similar products together, UBS has unjustly enriched itself the expense of its unsuspecting investors to the tune of tens of billions of dollars. No other firm has ever accomplished such a feat in the American stock market. Given the undisputed fact of its prior criminality with regard to the manipulation of indexes for its own profit and a plenitude of other financial crimes, the UBS administration of its own index is akin to an army of foxes invading a henhouse.

10. It is undisputed that in its Prospectus for CEFL (see Exhibit 1, especially pages 1-2, 9-13 and 25), UBS reserved the right to recall its securities from its customers.

11. It is undisputed that throughout its Prospectus (see Exhibit 1, especially pages 5-7, 11-15 and 30-33), UBS conveys financial and tax advice to the Defendant.

The above-stated eleven factual reasons singularly or in any combination are sufficient to qualify the Defendant as a long-term "customer" of UBS and thus eligible to have his dispute with UBS arbitrated in a FINRA forum.

17. Defendant admits Paragraph 17.

18. Defendant admits Paragraph 18 in part and denies that he purchased the UBS security identified as "UBS's ETN CEFL" from Schwab. Defendant admits that over the course of approximately two years he purchased and sold many thousands of shares of

23

the UBS product CEFL from UBS by placing orders to buy and sell those products through Schwab who executed each of those orders.

19. Defendant admits Paragraph 19.

**20.** Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 20.

21. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 21.

**22.** Defendant denies the allegations in Paragraph 22.

**23.** Defendant denies the allegations in Paragraph 23.

**24.** Defendant denies the allegations in Paragraph 24.

**25.** Defendant admits the allegation in Paragraph 25.

**26.** Defendant denies the allegations in Paragraph 26 except to the extent that he admits that he a purchased and sold many thousands of shares of the UBS product CEFL over a period of approximately two years from UBS by placing orders to buy and sell those products with Schwab who executed each of those orders. Defendant further admits that he was a customer of UBS because he purchased the debt security created by UBS and called CEFL and over the course of approximately two years and received numerous monthly dividends from UBS and paid UBS numerous monthly financing and/or management fees for managing the UBS product called CEFL and granted UBS the right

24

to recall their securities from him, thereby singularly or in any combination forming a long-term customer relationship with UBS.

**27.** Defendant denies the allegations in Paragraph 27 except for admitting that the transactions described in Defendant's Paragraph 26 were more than sufficient to establish a customer relationship with UBS, a relationship which is a form of brokerage account.

**28.** Defendant denies the allegations in Paragraph 28 except to the extent that he admits that he a purchased and sold many thousands of shares of the UBS product CEFL over a period of approximately two years from UBS by placing orders to buy and sell those products with Schwab who executed each of those orders. Defendant further admits that he was a customer of UBS because he purchased the debt security created by UBS and called CEFL and over the course of approximately two years and received numerous monthly dividends from UBS and paid UBS numerous monthly financing and/or management fees for managing the UBS product called CEFL thereby forming a long-term customer relationship with UBS.

**29.** Defendant denies the allegation in Paragraph 29.

**30.** Defendant denies the allegation in Paragraph 30.

**31.** Defendant admits the allegation in Paragraph 31.

**32.** Defendant admits in part the allegations in Paragraph 25, but denies that FINRA Director's denial of UBS's request to withdraw from arbitration necessitated UBS to resort to this Court. Moreover, Defendant admits that on May 9, 2016 the FINRA Director reiterated his denial, calling the FINRA forum "appropriate."

**33.** Defendant denies the allegation in Paragraph 30. Instead Defendant admits that he has already suffered harm and prejudice with this Court's issuance of its TRO and will suffer great harm and prejudice were this Court to grant UBS's requested relief.

**34.** Defendant denies the allegation in Paragraph 34, but admits that to the best of his knowledge and belief UBS has entirely failed to demonstrate just how it would be "imminently harmed by the absence of such relief."

**35. – 48.** Defendant repeats and re-alleges all of his foregoing admissions and denials as if fully set forth herein. Paragraphs 35. – 48. contain Plaintiff's prayer for relief, to which no response is required. To the extent a response is deemed necessary, Defendant denies the allegations in Plaintiff's prayer for relief and further avers that Plaintiff is not entitled to any relief sought in this action. Defendant also denies each and every allegation of the Complaint not specifically and expressly admitted herein.

## Fourteenth Affirmative Defense

The Plaintiff has failed to disclose material facts such as its financial criminal history, which included the rigging of LIBOR interest rate (arguably the most important interest rate in the world and used as the basis for setting numerous other interest rates), which is made even more significant given the fact that UBS stated in its Prospectus for CEFL (see Exhibit 1, pages 14, 23 and 32) that it monthly and it alone would administer the index that UBS would use to establish the value of the CEFL share and the amount of the monthly CEFL dividend it would pay.

26

## Fifteenth Affirmative Defense

Defendant respectfully reserves the right to add additional counterclaims to the counterclaims that follow this Answer to the Complaint.

## Sixteenth Affirmative Defense

Defendant respectfully reserves the right to amend his Answer to the Complaint should such amendment become necessary.

## Seventeenth Affirmative Defense

Defendant respectfully reserves the right to add additional affirmative defenses should such defenses become necessary.

UBS has not shown that it will suffer "irreparable harm" if an injunction is not granted. Conversely, it is who has the Defendant who will suffer "irreparable harm" if an injunction is granted. (2) UBS has not shown how the public interest would be served by circumventing FINRA with a federal injunction; (3) UBS has not shown how to would be injured by arbitrating Defendants' claim with it; and (4) UBS has intentionally misrepresented how it would succeed on the merits by failing to include in its Complaint and Supplemental Motion the ten direct links, as set forth above, Defendant has established with UBS, which singularly or in any combination qualify Defendant as a "customer" of UBS as the term "customer" has been defined in the courts of the Fourth Circuit and by FINRA Rule 12200.

3. Defendant and Counterclaimant Robert Zimmerman is a resident of North Carolina.

4. On information and belief, Plaintiff and counterclaim Defendant UBS Financial Services, Inc. (UBS) that Counterclaimant believes is a wholly owned subsidiary of the United Bank of Switzerland and has brought an action in this Court claiming that Zimmerman is not entitled to arbitrate his claim against UBS in the FINRA forum.

## **FACTUAL ALLEGATIONS**

5. Counterclaimant hereby incorporates all of his foregoing responses to the Complaint and paragraphs 1-4 of these Counterclaims.

6. On or about November 14, 2014 UBS replaced its Prospectus for the security it calls CEFL with a document they call "PRODUCT SUPPLEMENT (To Prospectus dated November 14, 2014)." When Defendant telephoned UBS to ask for a Prospectus he was told that the Product Supplement replaced the Prospectus and was available, and still is, at the UBS website for CEFL. Hereafter, Defendant will repeatedly refer to that thirty-three-page Product Supplement as Prospectus. Counterclaimant relied solely on the November 14, 2016 UBS document for the facts that led him to purchase the UBS security called CEFL.

7. UBS's parent company is Swiss bank that specializes in helping wealthy people the world over from the IRS and other taxing authorities. Not well known is the fact that if UBS is not a criminal organization, it certainly comes pretty close. Over the years UBS has been sued hundreds, if not thousands, of times by

to exclude as customers of securities firms those entities that had not established a direct relationship with the FINRA member securities firm, such as a brokerage account.

16. As above, Counterclaimant has admitted he had no brokerage account with UBS but, as above, has established a direct business relationship with UBS, which included purchasing the debt securities that UBS had underwritten for itself, receiving numerous dividends from UBS and paying UBS numerous monthly management fees.

17. UBS knew, or should have known, that Counterclaimant had established a business relationship with UBS as defined by the Fourth Circuit and FINRA and intentionally omitted the facts that Counterclaimant, as above, had established a multi-faceted business relationship with UBS.

18. UBS filed its Complaint against Counterclaimant to advance ulterior purposes. On information and belief these ulterior purposes include, but may not be limited to unlawfully sacrificing an aged and financially strapped Defendant in hopes of expanding the Fourth Circuit's interpretation of what is and what is not a FINRA member firm "customer" to include as a non-customer any person or entity that does not have a brokerage account with the FINRA member firm, and to intimidate others who may be contemplating the filing of a FINRA claim from filing that claim.

19. In their attempts to advance their ulterior purposes, UBS abused prosecutorial discretion.

Exchange Traded Note (ETN), which it calls CEFL, the concealment of which fraudulently induced Counterclaimant to invest in the UBS security CEFL and to incur substantial monetary loss.

26. UBS knew at the time they prepared and distributed their Prospectus for CEFL (see Exhibit 1) that were they to disclose the facts in the Prospectus that they were lawfully required to disclose that prospective investors would have serious misgivings about purchasing CEFL.

27. Long after suffering substantial losses as a result of investing in CEFL, and after Counterclaimant had initiated a claim against UBS in the FINRA forum, and having obtained in part some knowledge of UBS's prior financial crimes, concealment of material facts from their Prospectus and not knowing if his FINRA claim would be successful, in an effort to mitigate his losses, Counterclaimant made a small purchase of CEFL after its price had almost halved, but soon abandoned that effort to mitigate his losses, realizing that he was running a fool's made a small purchase of CEFL after its price had almost halved, but soon abandoned that effort to mitigate his losses, realizing that he was running a fool's errand.

28. As a direct and proximate result of Counterclaimant's investment in CEFL, Counterclaimant was damaged.

As a result of their conduct, UBS is liable to Counterclaimant for punitive damages and whatever further relief this Court or jury find fair and just.

## **COUNT 4: SECURITIES FRAUD**

34     •

29. Counterclaimant hereby incorporates all of his foregoing responses to the
    Complaint and paragraphs 1-28 of this Counterclaim.

30. With the intent to deceive and mislead Counterclaimant and other investors,
    UBS concealed material facts from its Prospectus (see Exhibit 1) for its Exchange
    Traded Note (ETN), which it calls CEFL, the concealment of which fraudulently
    induced Counterclaimant to invest in the UBS security CEFL and to incur
    substantial monetary loss.

31. UBS knew at the time they prepared and distributed their Prospectus for CEFL
    (see exhibit 1) that were they to disclose the facts in the Prospectus that they were
    lawfully required to disclose that prospective investors would have serious
    misgivings about purchasing CEFL.

32. Long after suffering substantial losses as a result of investing in CEFL, and after
    Counterclaimant had initiated a claim against UBS in the FINRA forum, and
    having obtained in part some knowledge of UBS's prior financial crimes as
    shown in part in Exhibit 3, concealment of material facts from their Prospectus,
    and not knowing if his FINRA claim would be successful, in an effort to mitigate
    his losses, Counterclaimant made a small purchase of CEFL after its price had
    almost halved, but soon abandoned that effort to mitigate his losses, realizing that
    he was running a fool's made a small purchase of CEFL after its price had almost
    halved, but soon abandoned that effort to mitigate his losses, realizing that he was
    running a fool's errand.

33. As a direct and proximate result of Counterclaimant's investment in CEFL,
    Counterclaimant was damaged.

35

As a result of their conduct, UBS is liable to Counterclaimant for punitive damages and whatever further relief this Court or jury find fair and just.

## COUNT 4: NEGLIGENT MISREPRESENTATION

34. Counterclaimant hereby incorporates all of his foregoing responses to the Complaint and paragraphs 1-33 of this Counterclaim.

35. At the time UBS prepared and distributed its Prospectus for CEFL (see Exhibit 1) and thereafter as UBS updated that Prospectus, UBS knew, or should have known, that they had had no reasonable ground for omitting the facts set out in paragraphs 1-8 above from the Prospectus and updates to the Prospectus for CEFL.

36. These unwarranted omissions and false representation were made in a reckless, negligent and deceptive manner.

37. As a direct and proximate result thereof, Counterclaimant was damaged.

**WHEREFORE,** Counterclaimant prays for judgment against UBS for (a) actual damages incurred; (b) punitive damages as the Court, through judge or jury sees fit; and (c) such other relief, at law or in equity, general or special, to which Counterclaimant is entitled.

Dated: May 26, 2016

Robert Zimmerman, Pro Se
329 Sandpiper Lane
Hampstead, NC 28443
Tel: 910-232-8990
Email:

## DEMAND FOR JURY TRIAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant and Counterclaimant Robert Zimmerman hereby demands trial by jury as to all counterclaim counts and other matters triable.

Respectfully submitted by: _____

Robert Zimmerman

Dated: May 26, 2016

Robert Zimmerman, Pro Se
329 Sandpiper Lane
Hampstead, NC 28443
Tel: 910-232-8990
Email: