IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-155-FL

| | | |
|---|---|---|
| UBS FINANCIAL SERVICES, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | ORDER |
| ROBERT ZIMMERMAN, | ) ) ) | |
| Defendant. | ) | |

This matter is before the court to memorialize and develop more fully the bases supporting its oral ruling, entered at hearing held June 17, 2016, denying in part and deferring ruling in part on defendant's motion to dismiss or, in the alternative, to compel arbitration. (DE 14). Also herein the court denies defendant's motion to dismiss, or in the alternative, to compel arbitration in remaining part and, upon further consideration, grants plaintiff's motion for preliminary injunction. (DE 2).

**BACKGROUND**

Plaintiff filed this case on April 7, 2016, after defendant initiated an arbitration proceeding against plaintiff and defendant's broker, Charles Schwab ("Schwab"), before the Financial Industry Regulatory Authority ("FINRA") (the "FINRA arbitration"). Plaintiff seeks a declaration that defendant is not its "customer," and thus is not entitle to compel it to arbitration, pursuant to the FINRA Rule of Arbitration (the "FINRA Rules"), Rule 12200. Also on April 7, plaintiff filed the instant motion for preliminary injunction, made pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.

On plaintiff's motion, on May 9, 2016, the court issued a temporary restraining order ("TRO"), restraining defendant from proceeding with the FINRA arbitration until the court could rule on plaintiff's motion for preliminary injunction. (DE 15).[1] On May 4, 2016, defendant filed the instant motion to dismiss or, in the alternative, compel arbitration. Defendant's motion sounds in large part under Federal Rule of Civil Procedure 12(b) and in this respect at hearing his motion was denied. The court found defendant's arguments unavailing that 1) it lacks subject matter jurisdiction, where the amount in controversy in this matter, he claims, does not exceed $75,000.00; 2) venue is improper in this district; 3) defendant was not served properly in accord with the Federal and North Carolina Rules of Civil Procedure; and 4) this case should be dismissed where plaintiff failed to join FINRA as a defendant.

To the extent motion by defendant, proceeding *pro se*, seeks to compel arbitration pursuant to the FAA § 4, defendant argues two theories. First, defendant argues that the FINRA Rules commit to FINRA the exclusive jurisdiction to determine whether or not he is a "customer" with the power to compel arbitration. Second, and in the alternative, defendant argues that he is plaintiff's "customer," as that term is defined under the relevant FINRA Rule and circuit precedent.

---

[1] TRO was renewed, pursuant to Federal Rule of Civil Procedure 65(b), on May 23, 2016. On June 6, 2016, with defendant's consent, the court again extended the TRO up to and including the date set for hearing on plaintiff's motion for preliminary injunction, June 17, 2016. Where the court took under advisement issues bearing on injunctive relief for plaintiff and defendant's competing motion, defendant was unwilling to consent to any further extension of the TRO from and after June 17, 2016. Accordingly, the restraining order has dissolved.

## STATEMENT OF FACTS

The material facts in this case are not in dispute and can be summarized as follows. Plaintiff is a FINRA member. Plaintiff[2] underwrote and issued an electronically traded note known as the "Monthly Pay 2xLeveraged Exchange Traded Access Security," referred to by the parties by its call sign, "CEFL" (the "CEFL security"). (See Product Supplement, DE 31, at 1). The CEFL security is a leveraged debt security that allows investors to experience twice the rate of return of a certain index. (Id. at 5–6). The leveraged aspect of the CEFL security is essentially a loan made by plaintiff to investors in the amount of the face value of the security, $25.00. (See id.). In exchange for the benefits of that loan, investors pay to plaintiff monthly fees. (Id. at 6). To collect those fees, plaintiff garnishes them from the monthly distributions provided to investors, known as "coupons." (See id. at 23–24, 27, 37) (coupon amount determined by principal; fees may reduce principal).

Defendant purchased a number of shares of the CEFL security from Schwab. Defendant does not own an account with plaintiff and has not had any contact with plaintiff, except for his monthly fee payments. Following defendant's purchase of the CEFL security, it declined in value approximately 40%, from $25.00 to $15.00. Defendant lost at least $85,000.00 as a result.

## COURT'S DISCUSSION

A.  Defendant's Motion to Dismiss

Defendant moves to dismiss the complaint on a number of bases, including lack of subject matter jurisdiction, improper venue, failure of service, failure of service of process, and failure to join an indispensable party. None of these arguments are meritorious. The court has subject matter

---

[2] The securities actually were issued by UBS AG and underwritten by UBS Securities, LLC. At hearing, however, plaintiff acknowledged that it received a financial benefit from a given investor's investment in the CEFL security. For ease of reference, and because it does not affect the court's overall conclusion, the court refers to the security's underwriter and issuer as "plaintiff."

jurisdiction over this case, where the potential pecuniary consequences to plaintiff of arbitration are at least $85,000.00. See 28 U.S.C. § 1332(a). Moreover, venue properly can be laid in this district because defendant resides in this district and the FINRA arbitration, if it is to occur, will occur in this district. See § 1391(b).

Third, although defendant challenges process and service of process, he essentially admits that service complied with Federal Rule of Civil Procedure 4(e)(1) and North Carolina Rule of Civil Procedure 4(j)(1)(D). Although defendant maintains that he never received from plaintiff a copy of the complaint, he admits that he turned the delivery person attempting to serve process away and received actual knowledge of this suit through his participation in the FINRA arbitration. Because plaintiff complied with the terms of the Civil Rules, and because defendant has actual notice of this proceeding, his motion was denied.

Finally, defendant challenges plaintiff's failure to join FINRA, where defendant contends FINRA is an indispensable party to this litigation. To determine whether a party should be joined under Civil Rule 19 the court engages in a two step inquiry: 1) whether the party is "necessary" to the action under Civil Rule 19(a); and 2) whether the party is "indispensable" under Civil Rule 19(b). Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005); Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc., 210 F.3d 246, 249 (4th Cir. 2000). "The burden of proof rests on the party raising the defense . . . to show that the person who was not joined is needed for a just adjudication." Wood, 429 F.3d at 92 (citing 7 Charles A. Wright et al., Federal Practice and Procedure § 1609 (3d ed. 2001) (internal quotations omitted).

In this case defendant has failed to tender any argument or evidence demonstrating the necessity of adding FINRA. Moreover it strains credulity to suggest that an arbitral body, like, for

4

example, FINRA or the American Arbitration Association, must be made a party to a lawsuit each time one of its rules must be construed by a court.

B.   Defendant's Motion to Compel Arbitration

  1.   Standard of Review

A motion to compel arbitration is akin to a motion for summary judgment. See Chorley Enters. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 563–64 (4th Cir. 2015). Therefore, such motions should be granted where an examination of the pleadings, affidavits, and other discovery materials properly before the court demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). Where a genuine dispute as to one or more material facts exists, however, the FAA requires a jury trial. Chorley, 807 F.3d at 563–64.

The party seeking to compel arbitration "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In making this determination, the court must view the inferences drawn

5

from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S.654, 655 (1962).

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2. Legal Background

Before jumping into the parties' various arguments, the court discusses briefly the interplay between the FINRA Rules and the FAA. The "customer" issue central to disposition of this case finds its basis in FINRA Rule 12200. That FINRA Rule provides that

Parties must arbitrate a dispute under [FINRA's Customer] Code if:

- Arbitration under the Code is either:

    (1) Required by a written agreement; or
    (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- the dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

6

FINRA Rule 12200, available at http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4096 (last visited June 19, 2016).[3] In other words "in the absence of a separate arbitration agreement" an entity can compel a FINRA member to arbitrate under FINRA Rule 12200 if "(1) the party is a 'customer' of the FINRA member; and (2) there is a dispute between the 'customer' and the FINRA member, or the member's associated person, arising in connection with the business activities of the FINRA member or a member's associated person." Morgan Keegan & Co. v. Silverman, 706 F.3d 562, 564 (4th Cir. 2013). There is no dispute the parties do not have a written agreement to arbitrate.

The FINRA Rules are a contract between FINRA and its members; "customers" may take advantage of the FINRA Rules by compelling members to arbitrate under the third-party beneficiary doctrine. UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc., 660 F.3d 643, 648–49 (2d Cir. 2011) ("WVUH"); see also, e.g., Wash. Square Secs., Inc. v. Aune, 385 F.3d 432, 435 (4th Cir. 2004) ("The [National Association of Securities Dealers] Code constitutes an 'agreement in writing' under the Federal Arbitration Act, 9 U.S.C. § 2, which binds Washington Square, as an NASD member, to submit an eligible dispute to arbitration upon a customer's demand."). To determine whether a particular dispute is covered by the FINRA Rules, the court must "consider that issue under ordinary principles of contract law." Raymond James Fin. Servs., Inc. v. Cary, 709 F.3d 382, 386 (4th Cir. 2013).

Applying "ordinary principles of contract law" in construing the FINRA Rules affects the court's analysis in a major way, at least when the court must determine whether a given entity is a

---

[3] The FINRA Customer Code begins at FINRA Rule 12000 and continues through FINRA Rule 12905. The Customer Code governs disputes between members and customers. Its counterpart for disputes between FINRA members is the Industry Code, which begins at FINRA Rule 13000.

7

FINRA member's "customer." As a general rule, there exists a liberal federal policy favoring arbitration. See id. at 385–86. That means, if at all possible, where a contract is ambiguous, courts construe it in such a way that compels any given dispute arising under the contract be submitted to arbitration. But, application of that liberal federal policy assumes the existence of an agreement to arbitrate. See id. After all, arbitration is "a matter of consent, not coercion." Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 479 (1989). Because a given FINRA member has agreed to arbitrate only with its "customers," if the court must determine whether a given party is a "customer" that inquiry "relates to the existence of a contract to arbitrate, not the scope of that potential agreement." Raymond James, 709 F.3d at 386. Thus, defendant does not get the benefit of any presumption in favor of arbitration, but, rather, the court must interpret the FINRA Rules consistent with the reasonable expectations of the FINRA member. See Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 171 (2d Cir. 2011); see also Raymond James, 709 F.3d at 386 (directing courts to apply "ordinary principles of contract law").

    3.    The Court, not FINRA, must Determine Whether Defendant is Plaintiff's "Customer"

In light of those principles, defendant's first argument, that the FINRA arbitration panel should be allowed to determine its jurisdiction, doesn't hold water.

Undisputedly parties may agree to defer to the arbitrator substantive questions of arbitrability, such as those addressing the validity and scope of the arbitration agreement. Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). To delegate that responsibility to the arbitrator, all the parties need to do is evidence their intended purpose in a "clear and unmistakable"

8

manner. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944–45 (1995) (internal alterations omitted).

If the parties' intent is clear and unmistakable, then on a motion to compel arbitration the court examines only whether that portion of the arbitration agreement delegating substantive questions of arbitrability to the arbitrator is in and of itself a valid contract. See Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 71–72 (2010). A question of whether an entity is a FINRA member's customer bears on the existence, rather than the scope, of an agreement. Raymond James, 709 F.3d at 386; see also John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 55 (2d Cir. 2001). Thus, a FINRA member, like plaintiff, has the right to challenge in court whether a given entity is its "customer." That inquiry, in turn, decides whether a contract exists between the FINRA member and FINRA relevant to the dispute at issue.

4.      Defendant is not Plaintiff's "Customer"

That leaves the substantive lynchpin of the motion: whether defendant is plaintiff's "customer." On the one hand, defendant contends he is plaintiff's "customer" because he paid to plaintiff a fee in exchange for leverage, essentially a lending "service." (See Product Supplement at 6). On the other hand, plaintiff contends that lending service creates only an "indirect" relationship between the parties. Although this case presents a close question, plaintiff has the better argument.

The FINRA Rules are notoriously unhelpful when it comes to defining the term "consumer." FINRA Rule 12100(i) defines "customer" only in the negative, excluding any "broker or dealer." FINRA Rule 12100(i). Recently, however, the Fourth Circuit has provided some guidance: A "customer" is "one, not a broker or dealer, who purchases commodities or services from a FINRA

9

member in the course of the member's business activities insofar as those activities are covered by FINRA's regulation, namely the activities of investment banking and the securities business." Carilion Clinic, 706 F.3d at 325.

Not just any purchase of commodities or services will do, however. Any purchase must establish a "direct" relationship with the FINRA member; an indirect or attenuated relationship will not suffice. See Raymond James, 709 F.3d at 387; SunTrust Banks, Inc. v. Turnberry Capital Mgmt. LP, 945 F. Supp. 2d 415, 424–25 (S.D.N.Y. 2013). Finally, and in all events, even where there is a purchase of commodities or services, that still is not enough to make an entity a FINRA member's "customer" unless FINRA and its members reasonably would expect that result. See Wachovia, 661 F.3d at 171; see also Raymond James, 709 F.3d at 386.

Many examples of this definition in application exist in the case law. For example, an entity that holds an account with a FINRA member unquestionably is its "customer." See Citigroup Global Mkts. Inc. v. Abbar, 761 F.3d 268, 275 (2d Cir. 2014). For another example, an entity that purchases from a FINRA member underwriting services preceding the issuance of a bond also is the FINRA member's "customer," see Carilion Clinic, 706 F.3d at 327–28, as is one who purchases auction services from a FINRA member. See WVUH, 660 F.3d at 650. By contrast, an entity that simply holds shares in a mutual fund underwritten and issued by a FINRA member is not that member's "customer," at least when the entity purchases those shares through a third-party. See Morgan Keegan, 706 F.3d at 567. Likewise, one who merely receives "financial advice," without purchasing directly an investment or brokerage related service, also is not a customer. See Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc., 264 F.3d 770, 773 (8th Cir. 2001).

Plaintiff's lending service is insufficiently direct to create a "customer" relationship. For an individual investor to successfully claim his status as a FINRA member's "customer," he must purchase goods or services directly from a FINRA member. See Raymond James, 709 F.3d at 387; SunTrust, 945 F. Supp. 2d at 424–25. Defendant never established a direct contractual or transactional relationship with plaintiff for the purpose of purchasing any good or service; defendant's only "direct" interaction was with Schwab, his broker.

Defendant's purchase of lending services creates only an attenuated connection between he and plaintiff for at least two reasons. For one, defendant never requested nor purchased any lending "service." Defendant purchased the CEFL security from Schwab. Even though it was obvious that plaintiff would be providing a lending "service" to investors, defendant never set out for the purpose of purchasing that service. Rather, defendant purchased that "service" only indirectly, as a collateral consequence of his purchase of the CEFL security. For another reason, defendant never paid plaintiff directly for the leverage it provided him. Defendant's payments were garnished from monthly distributions provided to him by plaintiff. Thus, defendant never took any affirmative steps to purchase any service from plaintiff. Both of these features work in tandem to deny defendant "customer" status.

In any case, the court's construction of the term "customer" also enjoys support in the case law. For example, the notion that monthly fees are sufficient to render an investor a "customer" at least has been implicitly rejected by the Fourth Circuit in Morgan Keegan. 706 F.3d at 564, 567. In Morgan Keegan, the court rejected the idea that the purchase of a security underwritten and issued by a FINRA member through a third party placed the investor in the relation of a "customer" to the FINRA member.

The Morgan Keegan court never addressed the existence or effect of periodic administrative fees paid to Morgan Keegan by investors; nevertheless, many investments do require such periodic administrative fees. If the court were to hold that such fees created a "customer" relationship between an investor and a FINRA member with which the investor has no other direct contact, it would effectively undo the holding in Morgan Keegan. Similarly, such a rule would unduly expand the definition of the term "customer." See id. at 567; Bensadoun v. Jobe-Riat, 316 F.3d 171, 177 (2d Cir. 2003).

Defendant's contrary suggestion, that there somehow is a difference between periodic administrative fees and fees, like the one at issue here, paid to compensate the FINRA member for leverage, is not workable. In both cases, the investor compensates the FINRA member for a service, whether that service be administration of a mutual fund or, what is in effect, a loan.

C.     Plaintiff's Motion for Preliminary Injunction

Plaintiff must establish the following factors to obtain a preliminary injunction: 1) that it is likely to succeed on the merits; 2) that it is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in its favor; and 4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Based on the above, plaintiff clearly has shown a likelihood of success on the merits. Likewise, plaintiff has carried its burden on the remaining three factors. On the second element, courts have "held that the harm suffered by an individual who is forced to arbitrate claims it did not agree to arbitrate is per se irreparable because it forces an individual to expend resources it cannot later recover." Morgan Keegan & Co. v. Louise Silverman Trust, No. 11-2533, 2012 WL 113400, *5 (D. Md. Jan. 12, 2012), aff'd sub nom., 706 F.3d 562 (4th Cir. 2013) (collecting cases); accord

Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003). On the third element, the balance of the equities tips in favor of an injunction where defendant is not plaintiff's "customer." See, e.g., Sagepoint Fin., Inc. v. Small, No. 15-CV-571, 2015 WL 2354330, at *6 (E.D.N.Y. May 15, 2015) (balance of equities tips in favor of injunction where defendant was not plaintiff's "customer," among other things). Finally, the public interest favors an injunction. Denying an injunction effectively would force plaintiff to submit to arbitration, a proceeding that, as discussed above, defendant has no right or power to compel against plaintiff.[4]

## CONCLUSION

Based on the foregoing, the court DENIES defendant's motion to dismiss or, in the alternative, compel arbitration in its entirety. (DE 4). The court GRANTS plaintiff's motion for preliminary injunction. (DE 2). The court DIRECTS the parties to confer and provide to the court a status report within 14 days from date of entry of this order. That report should discuss what, if any, need for discovery exists, and memorialize a suggested schedule for final resolution of the case. It shall also refer to some agreed-to settlement technique to be utilized in an effort to resolve issues in dispute as between the parties finally and provide a date certain for the parties' resort to that technique. Plaintiff shall post within this 14 day period security in the total amount of $5,000.00.

SO ORDERED, this the 21st day of June, 2017.

LOUISE W. FLANAGAN
United States District Judge

---

[4] Although, upon review of the facts and law, the court likely has sufficient evidence to determine permanently the issues between the parties, the court previously gave no notice of its intent to enter final judgment following the June 17, 2016 hearing. Failure to give such notice generally forecloses the court's ability to enter final judgment upon disposition of a motion for preliminary injunction. See aaiPharma Inc. v. Thompson, 296 F.3d 227, 234–35 (4th Cir. 2002). The Fourth Circuit has recognized an exception to that general rule where "special circumstances" exist. Id. at 235. But, this case does not present any. In particular, defendant has requested a jury trial and thus has not indicated that he "would welcome a decision on the merits from this court" Id. (internal quotations omitted).