IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-155-FL

| | |
|---|---|
| UBS FINANCIAL SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) ORDER |
| v. | ) |
| ROBERT ZIMMERMAN, | ) |
| Defendant. | ) |

This matter is before the court on plaintiff's motion to dismiss defendant's counterclaims, pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).[1] (DE 44). Defendant has responded in opposition and plaintiff has replied. In this posture, the issues raised are ripe for ruling. For the following reasons, plaintiff's motion is granted.

## BACKGROUND

On January 6, 2016, defendant initiated an arbitration proceeding against plaintiff and defendant's broker, Charles Schwab & Company, LLC ("Schwab"), before the Financial Industry Regulatory Authority ("FINRA") (the "FINRA arbitration"). (DE 2-3). On February 9, 2016, in the arbitration proceeding, plaintiff moved to dismiss the FINRA arbitration on the ground that defendant was not its "customer," a designation necessary to compel the arbitration in the absence

---

[1] Defendant's motion for judgment on the pleadings (DE 37) and motion for various relief (DE 41) are also ripe. However, given the interrelatedness between those motions and plaintiff's ripening motion for preliminary injunction (DE 51), the court only addresses herein arguments raised that relate to plaintiff's motion to dismiss. The court will address the parties' remaining arguments once plaintiff's motion to enforce the court's preliminary injunction ripens.

of a written agreement to arbitrate. (DE 2-6). By letter dated March 31, 2016, the Director of FINRA Dispute Resolution denied plaintiff's motion to dismiss without opinion. (DE 2-7).

On April 7, 2016, plaintiff initiated this action against defendant, seeking to enjoin defendant from pursuing arbitration against it. (DE 1). That same date, plaintiff filed a motion for preliminary injunction, made pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. (DE 2). On May 4, 2016, defendant filed a motion to dismiss, or in the alternative motion to compel arbitration. (DE 14). The court issued a temporary restraining order ("TRO") on May 9, 2016, restraining defendant from proceeding with the FINRA arbitration pending resolution of plaintiff's motion for preliminary injunction. (DE 15). Thereafter, defendant filed an answer to plaintiff's complaint, which included counterclaims against plaintiff. (DE 22).

On June 17, 2016, the court held hearing on plaintiff's motion for preliminary injunction and defendant's motion to dismiss. On June 21, 2016, the court entered an order, memorializing its oral rulings made at hearing. (DE 32). The court denied defendant's motion to dismiss, or in the alternative, motion to compel arbitration, and granted plaintiff's motion for preliminary injunction. The court also directed the parties to provide to the court an updated status report and directed plaintiff to post security in the total amount of $5,000.00.

Thereafter, on June 30, 2016, defendant filed a first amended counterclaim. (DE 33). Defendant's first amended counterclaim asserts against plaintiff the following claims: (1) abuse of process; (2) unjust enrichment; (3) common law fraud; (4) securities fraud; and (5) negligent representation. Pursuant to the court's June 21, 2016, order, the parties filed separate status reports and defendant filed a motion for clarification. (DE 35, 36). Included in defendant's motion for clarification was a request to amend his answer and counterclaims. (DE 35, 36). Thereafter,

2

defendant filed a motion for partial judgment on the pleadings on July 8, 2016, (DE 37), and motion for miscellaneous relief on July 21, 2016. (DE 41).

On July 25, 2016, the court entered an order denying defendant's motion for clarification, which the court construed in part as a motion for reconsideration of the court's order granting plaintiff's motion for preliminary injunction. (DE 42). The court also denied without prejudice defendant's motion to amend his answer and counterclaim.

On August 4, 2016, plaintiff filed the instant motion to dismiss defendant's first amended counterclaim, pursuant to Rule 12(b)(6). In support of its motion, plaintiff submitted a memorandum of law along with two exhibits. On August 8, 2016, defendant filed an updated status report, informing the court that he replaced plaintiff UBS Financial Services, Inc. as a party to the arbitration proceeding with other UBS entities, UBS AG, UBS Group AG, and UBS Securities, LLC. (DE 47). On August 26, 2016, defendant responded in opposition to plaintiff's motion to dismiss, and plaintiff replied on September 12, 2016.

After defendant's motions for judgment on the pleadings and miscellaneous relief and plaintiff's motion to dismiss were submitted to the court, plaintiff filed a motion seeking enforcement of the preliminary injunction previously ordered by this court. In the alternative, plaintiff seeks to enjoin defendant from pursuing FINRA arbitration against other UBS entities, UBS Securities, LLC, UBS AG and UBS Group AG. (DE 51). Defendant's response to that motion is due by December 5, 2016.[2]

---

[2]Following the submission of plaintiff's motion to dismiss, defendant filed another counterclaim on November 23, 2016, which seeks to further supplement his first amended counterclaim. (DE 53). Pursuant to Rule 15(a), defendant must seek leave of court or obtain plaintiff's consent to amend his counterclaim a second time. As defendant's counterclaim is not properly before the court, the court considers only the factual allegations as set forth in defendant's first amended counterclaim in deciding plaintiff's motion to dismiss.

**STATEMENT OF FACTS**

The facts alleged and incorporated by reference in defendant's first amended counterclaim are summarized as follows. Plaintiff is a member of FINRA. (DE 22). Plaintiff underwrites the electronically traded note, "Monthly Pay 2xLeveraged Exchange Traded Security," which is commonly known as a CEFL security. (DE 22 at 24; DE 22-1). The CEFL security is a leveraged debt security that allows investors to experience up to twice the rate of return of a certain index. (DE 22 at 24).

On or about November 14, 2014, plaintiff replaced its prospectus for the CEFL security with a product supplement. (DE 33 at 5). When defendant requested a copy of the prospectus for the CEFL security, he was told that the prospectus had been replaced with the product supplement and that a copy of the prospectus for the CEFL security was available online. (Id.). Defendant alleges that he never received a copy of the original prospectus and that such prospectus is not available online. (Id.).

Sometime after November 14, 2014, and over the course of two years, defendant purchased numerous shares of CEFL securities from his broker, Schwab. These purchases were based on information provided in the product supplement. (DE 22 at 29). Defendant does not have a brokerage account with plaintiff, (Id. at 30), but he does receive monthly dividends from plaintiff and pays plaintiff monthly fees for managing the CEFL securities. (Id. at 24).

Since the date defendant purchased the CEFL securities, the value of the securities has declined. (DE 33 at 5–6). As a result, defendant has suffered substantial losses. (Id. at 10, 12). Defendant contends that had certain information been disclosed in the CEFL security's prospectus and product supplement, he would not have sustained such losses. (Id.). Specifically, defendant

4

contends that plaintiff misrepresented itself in the CEFL security's prospectus and product supplement by failing to disclose certain information regarding its criminal history, pending lawsuits, and pending Department of Justice investigations. (DE 22 at 35; DE 22-3).

**DISCUSSION**

A.   Standard of Review

   1. Motion to Dismiss

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

In evaluating the complaint, "[the] court accepts all well-plead facts as true and construes these facts in the light most favorable to the plaintiff, "but does not consider legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). When a document is attached to a motion to dismiss, "a court may consider it in determining whether to dismiss the [claim] if it was integral to and explicitly relied on in the [pleading] and if the [claimants] do not challenge its

5

authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). If additional materials "outside the pleading[s] are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment . . ., and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. Pro. 12(b); see Gay v. Wall, 761 F.2d 175, 178 (4th Cir. 1985).

Courts must liberally construe pro se complaints, and a "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, courts "cannot ignore a clear failure to allege facts" that set for a cognizable claim. Johnson v. BAC Home Loan Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011). "The 'special judicial solitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dep't of Soc. Servs. for the City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990).

B.  Analysis

1. Abuse of Process

Abuse of process is "the misuse of legal process for an ulterior purpose." Fowle v. Fowle, 263 N.C. 724, 728 (1965). "One who uses legal process to compel a person to do some collateral act not within the scope of the process or for the purpose of oppression or annoyance is liable [for] damages in a common law action for abuse of process." Id. at 727. In North Carolina, abuse of process "requires both an ulterior motive and an act in the use of the legal process not proper in the regular prosecution of the proceeding, and that both requirements related to defendant's purpose to achieve through the use of the process some end foreign to those it was designed to effect."

6

Stanback v.Stanback, 297 N.C. 181, 200 (1979) (quotations omitted). "The ulterior motive requirement is satisfied when the [claimant] alleges that the prior action was initiated by [the respondent] or used by him to achieve a collateral purpose not within the normal scope of the process used." Id. "The act requirement is satisfied when the [claimant] alleges that once the prior proceeding was initiated, the [respondent] committed some willful act whereby he sought to use the existence of the proceeding to gain advantage of the [claimant] in respect to some collateral matter." Id.

Defendant's first amended counterclaim fails to allege sufficient facts to support a cause of action for abuse of process. Defendant claims that plaintiff filed its complaint against him for the ulterior purpose of "unlawfully sacrificing an aged and financially strapped [d]efendant in hopes of expanding the Fourth Circuit's interpretation of what is and is not a FINRA member firm 'customer' to include as a non-customer any person or entity that does not have a brokerage account with the FINRA member firm, and to intimidate others who may be contemplating the filing of a FINRA claim from filing that claim." (DE 33 at 8–9).

However, defendant has not alleged any improper act on the part of plaintiff following the institution of the proceeding seeking to enjoin defendant from pursuing arbitration against plaintiff. Rather, defendant merely alleges an improper act in the filing of the action, which cannot constitute abuse of process. See Melton v. Rickman, 225 N.C. 700, 704 (1945) ("Nor can a cause of action [for abuse of process] arise out of the issuance of the process alone."). Accordingly, defendant's abuse of process claim against plaintiff must be dismissed.

2. Unjust Enrichment

An unjust enrichment claim is neither wholly tortious nor wholly contractual. Booe v.

7

Shadrick, 322 N.C. 567, 570 (1988). To establish a claim for unjust enrichment, a party must allege that it conferred a benefit on the other party, the other party consciously accepted the benefit, and the benefit was not conferred officiously or gratuitously. Id. at 556. The benefit must also be measurable. Id.

Defendant fails to allege facts sufficient to state a claim for unjust enrichment under North Carolina law. In his first amended complaint, defendant merely contends that "UBS has been unjustly enriched at the expense of the [c]ounterclaimant." (DE 33 at 10). This conclusory allegation, however, is insufficient to state a claim for relief. See Nemet 591 F.3d at 255.

To the extent defendant seeks to show that plaintiff was unjustly enriched from defendant's purchases of CEFL securities and the corresponding fee payments defendant paid plaintiff each month, defendant still fails to state a plausible claim for relief. Defendant purchased CEFL securities from Schwab, not plaintiff. Furthermore, defendant had no brokerage account with plaintiff. Although plaintiff did receive monthly fee payments from defendant, those payments were not paid directly by plaintiff, but instead garnished from monthly distributions plaintiff provided defendant. (DE 22-1 at 2).

Additionally, defendant paid the monthly fees to plaintiff as compensation for managing defendant's securities. (DE 22 at 24). Defendant's first amended complaint does not allege that plaintiff failed to manage his securities. Rather, defendant's allegations against plaintiff relate to disclosures plaintiff allegedly failed to make prior to defendant's investment purchases. Accordingly, defendant's factual allegations fail to create a plausible inference that any benefit plaintiff may have received as a result of defendant's purchases was conferred "in a manner . . . not justified by the circumstances." Booe, 322 N.C. at 556. Consequently, defendant's factual

8

allegations are insufficient to support a claim of unjust enrichment under North Carolina law.

    3. Common Law Fraud

In order to state a claim for fraud under North Carolina law, a claimant must plead with particularity facts showing (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) results in damage to the injured party. Forbis v. Neal, 361 N.C. 519, 526–27 (2007). Further, fraud based upon concealment requires a duty to disclose. Griffin v. Wheeler-Leonard & Co., 290 N.C. 185, 198 (1976). "[I]n pleading . . . fraud, the particularity requirement is met by alleging time, place, and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." Terry v. Terry, 302 N.C. 77, 85 (1981).

Defendant fails to state a claim for fraud under North Carolina law. Accepting all defendant's allegations as true, defendant fails to allege the elements of fraud with the requisite particularity. Specifically, defendant's first amended complaint fails to plead with particularity facts showing how plaintiff's alleged omission of information regarding its "long history of . . financial crimes," would impact the share price of CEFL securities and allow plaintiff to "manipulate . . .the amount of the monthly dividend to be paid to CEFL shareholders." (DE 33 at 6–7, 11).

Furthermore, while defendant does allege that plaintiff failed to disclose information regarding its criminal history "with intent to deceive," defendant fails to allege sufficient facts substantiating this conclusory assertion. See Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotations omitted).

Defendant suggests that this intent is implied since many prospective investors would not have purchased shares of CEFL securities if they had knowledge of plaintiff's extensive criminal history. However, this suggestion is undermined by defendant's own concession that he "made a small purchase of CEFL" after learning about plaintiff's criminal history, despite having alleged that "if [he] had such foreknowledge, he would not have invested his retirement funds in CEFL." (DE 33 at 11–12). Accordingly, defendant's factual allegations fail state a claim of fraud under North Carolina law. See Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 205 (1988) ("[I]f a complainant pleads facts which serve to defeat the claim it should be dismissed.") (internal citations omitted).[3]

4. Securities Fraud

Section 10(b) of the Securities and Exchange Act and Rule 10b-5 promulgated thereunder make misrepresentation in connection with the purchase and sale of securities unlawful. See 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Section 10(b) prohibits any person from "us[ing] or employ[ing], in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5 "implements [§ 10(b)] by making it unlawful to, among other things, 'make any untrue statement of material fact or to omit to state a material fact necessary in order to

---

[3] In its motion to dismiss, plaintiff also argues that defendant fails to state a claim for fraud on the basis that information it allegedly failed to disclose was in fact disclosed. In support of this argument, plaintiff attaches to its motion, a copy of the prospectus and plaintiff's annual report. (DE 45-1; 45-2). Where defendant disputes the authenticity of these documents, the court does not consider them in deciding plaintiff's motion to dismiss. See Phillips v. LCI Intern., Inc., 190 F.3d 609, 618 (4th Cir. 1999) (noting that the court may consider documents outside of the complaint only when the authenticity of those documents is not challenged). In order to consider these documents, the court would have to convert the instant motion to one for summary judgment. Fed. R. Civ. P. 12(d).

make the statements made, in light of the circumstances under which they were made, not misleading.'" Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 37 (2011) (quoting 17 C.F.R. § 240.10b-5).

Under § 10(b) and Rule 10b-5, a party must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Id. at 37–38 (internal quotations omitted). Here, defendant's securities fraud claim is based upon an omission of material fact. An omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available." Basic Inc. v. Levinson, 485 U.S. 224, 231–32 (1988). Additionally, where claims are based upon omission of material fact, the claimant must allege that the other party owed to it a duty to disclose the omitted information. See Basic Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading [under federal securities laws].").

To the extent defendant alleges a claim of securities fraud under § 11, defendant must allege that the registration statement for a security which he purchased contained a material misstatement or omission. 15 U.S.C. § 77k(a); Herman & MacLean v. Huddleston, 459 U.S. 375, 381–83 (1983). Additionally, to the extent defendant alleges a claim of securities fraud under § 12(a)(2), defendant must allege that he purchased a security in response to a materially false or misleading prospectus or oral communication. See Yates v. Mun. Mortg. & Equity, LLC, 744 F.3d 874, 899 (4th Cir. 2014).

"Claims of securities fraud are subject to a heightened pleading standard." Zak v. Chelsea

11

Therapeutics Int'l, LTD., 780 F.3d 597, 606 (4th Cir. 2015). This heightened pleading standard requires allegations of a securities fraud claim to "state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind regarding the acts allegedly violating the Exchange Act." Id. (internal quotations omitted). Furthermore, "[e]valuating the strength of an inference is necessarily a comparative inquiry." Yates 744 F.3d at 885.

Accepting defendant's factual allegations as true, defendant's claims for securities fraud fail to state a plausible claim for relief under Rule 12(b)(6). Defendant claims that plaintiff "concealed material facts from its [p]rospectus and [p]roduct and [p]ricing [s]upplements for its Exchange Traded Note (ETN) called CEFL, the concealment of which fraudulently induced [defendant] to invest in the CEFL." (DE 33 at 12). Specifically, defendant contends that plaintiff failed to disclose information regarding certain criminal investigations and lawsuits brought against it. While defendant does allege that plaintiff concealed material information with "intent to deceive," he fails to plead with particularity facts showing that plaintiff acted with the requisite scienter in allegedly omitting certain information regarding its criminal history. (DE 33 at 12); see Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotations omitted).

Defendant suggests plaintiff acted with the requisite intent to deceive given that many investors "would have serious misgivings about purchasing CEFL," had plaintiff disclosed information regarding its financial crimes. (Id.). However, these allegations are insufficient to state a claim under 12(b)(6). Defendant himself concedes that he purchased shares of CEFL securities after learning about plaintiff's prior financial crimes. This concession undermines any inference that

12

the omissions were material and would have "significantly altered the 'total mix' of information available." Basic, 485 U.S. at 231–32. Accordingly, defendant's first amended counterclaim fails to allege sufficient facts that plaintiff's alleged omissions were material. Thus, defendant's first amended counterclaim fails to state a claim for securities fraud under § 10(b) and Rule 10b-5, § 11, and § 12(a)(2).

     5. Negligent Misrepresentation

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." Raritan, 322 N.C. at 206 (citations omitted). "To establish justifiable reliance a plaintiff must sufficiently allege that he made a reasonable inquiry into the misrepresentation and allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." Amesen v. Rivers Edge Golf Club & Plantation, Inc., 368 N.C. 440, 454 (2015). "Ordinarily, the question of whether an actor is reasonable in relying on the representations of another is a matter for the finder of fact." Marcus Bros. Textiles, Inc. v. Price Waterhouse, L.L.P, 350 N.C. 214, 224–25 (1999) (internal quotations omitted). "This question is one for the jury, unless the facts are so clear as to permit only one conclusion." Id. at 225 (internal citations omitted).

Defendant's first amended counterclaim fails to allege a claim for negligent misrepresentation under North Carolina law. In his first amended counterclaim, defendant suggests that the prospectus itself is a misrepresentation, which plaintiff negligently prepared by failing to include information regarding its criminal history. However, defendant fails to allege sufficient facts indicating that he justifiably relied on the prospectus. Specifically, defendant fails to allege that he

13

"made a reasonable inquiry into the misrepresentation . . . or that he could not have learned the true facts by exercise of reasonable diligence." Amesen, 368 N.C. at 454. Accordingly, defendant fails to state a claim for negligent misrepresentation under North Carolina law.

## CONCLUSION

Based on the foregoing, the court GRANTS plaintiff's motion to dismiss defendant's first amended counterclaim for failure to state a claim upon which relief can be granted, made pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 44). Defendant's first amended counterclaim is DISMISSED without prejudice. (DE 33).

SO ORDERED, this the 1st day of December, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge