IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-155-FL

| | | |
|---|---|---|
| UBS FINANCIAL SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ROBERT ZIMMERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion to enforce preliminary injunction, or in the alternative to expand the court's prior preliminary injunction order. (DE 51). Also before the court are defendant's motion for judgment on the pleadings, motion for miscellaneous relief, and motions to strike. (DE 37, 41, 58, 60, 62, 64).[1] The issues raised are ripe for ruling. For the reasons that follow, plaintiff's motion is granted in part and denied in part and defendant's motions are denied.

**STATEMENT OF THE CASE**

This case has a lengthy history that is summarized more fully in the court's prior orders. As pertinent here, on January 6, 2016, defendant initiated an arbitration proceeding against plaintiff and Charles Schwab & Company, LLC ("Schwab"), before the Financial Industry Regulatory Authority ("FINRA") (the "FINRA arbitration"). On April 7, 2016, plaintiff initiated this action against defendant and moved for preliminary injunction, seeking to enjoin defendant from pursing

---

[1] Also pending before the court is plaintiff's motion for pre-filing injunction. (DE 66). The court will address that motion in separate order once ripened.

arbitration against it, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. In response, defendant filed a motion to dismiss, or in the alternative, motion to compel arbitration. Pending resolution of plaintiff's motion for preliminary injunction, the court issued a temporary restraining order, which prohibited defendant from proceeding with the FINRA arbitration. Defendant answered plaintiff's complaint, asserting several counterclaims against plaintiff.

On June 17, 2016, the court held hearing on plaintiff's motion for preliminary injunction and defendant's motion to dismiss and compel arbitration. At hearing, the court denied defendant's motion and granted plaintiff's motion for preliminary injunction. The court memorialized its rulings from the June 17, 2016, hearing in order dated June 21, 2016. In denying defendant's motion, the court found that defendant could not compel arbitration against plaintiff because he was not plaintiff's customer, a designation necessary to compel arbitration absent written arbitration agreement. Thereafter, defendant filed a first amended counterclaim and status report, which included a motion for clarification.

Defendant filed the instant motion for partial judgment on the pleadings on July 8, 2016, and motion for miscellaneous relief on July 25, 2016. Plaintiff then moved to dismiss defendant's first amended counterclaim, which the court granted on December 1, 2016.[2]

Plaintiff, together with the UBS AG, UBS Group, and UBS Securities (together the "other UBS entities"), filed the instant motion to enforce preliminary injunction on November 9, 2016.

---

[2] Before the court could address plaintiff's motion to dismiss, defendant notified the court that he replaced plaintiff as party to the FINRA arbitration with UBS Securities, LLC ("UBS Securities"). (See DE 47; 52-1). During this time, plaintiff also attempted to amend his counterclaim. Defendant's amended counterclaim was never properly before the court since he failed to seek leave or obtain plaintiff's consent pursuant to Federal Rule of Civil Procedure 15(a).

Plaintiff seeks enforcement of the preliminary injunction granted by this court on June 17, 2016. In the alternative, plaintiff seeks to enjoin defendant from pursuing FINRA arbitration against the other UBS entities.

Defendant filed his first motion to strike on December 21, 2016. Defendant requests that the court strike plaintiff's complaint and motion to enforce preliminary injunction, as well as certain supporting briefs. Defendant also seeks reconsideration of the court's order granting plaintiff's motion for preliminary injunction. Thereafter, defendant filed three additional motions to strike, which reiterate arguments already before the court.[3]

## STATEMENT OF FACTS

The undisputed facts are summarized as follows. Plaintiff is a FINRA member. Plaintiff underwrote and issued an electronically traded note known as the "Monthly Pay 2xLeveraged Exchange Traded Access Security," referred to by the parties by its call sign, "CEFL" (the "CEFL security") (See Product Supplement, DE 31 at 1).[4] The CEFL security is a leveraged debt security that allows investors to experience twice the rate of return of a certain index. (Id. at 5–6). The leveraged aspect of the CEFL security is essentially a loan made by plaintiff to investors in the amount of the security's face value, or $25.00. (See id.). In exchange for the loan's benefits,

---

[3] In its response to defendant's second motion to strike, plaintiff requests that the court construe defendant's motion as a reply to its opposition to defendant's first motion to strike. Plaintiff also notices its intent to not submit additional briefing and requests that the court issue ruling based upon the current record. (DE 61 at 1).

[4] According to plaintiff, the CEFL securities actually were issued by UBS AG and underwritten by UBS Securities. At hearing on plaintiff's motion for preliminary injunction, plaintiff acknowledged that it received financial benefit from investments in the CEFL security. For ease of reference and because it does not affect the court's conclusion, in this section, the court refers to the security's underwriter and issuer as "plaintiff."

investors pay to plaintiff monthly fees.  (Id. at 6).  To collect those fees, plaintiff garnishes them from the monthly distributions provided to investors, known as "coupons."  (See id. at 23–24, 27, 37) (noting that the coupon amount is determined by the principal, which may be reduced by monthly fees).

Defendant purchased a number of shares of the CEFL security from Schwab.  Defendant does not own an account with plaintiff.  After defendant purchased shares of the CEFL security, it declined in value approximately 40%, from $25.00 to $15.00.  As a result, defendant lost at least $85,000.00.

**COURT'S DISCUSSION**

A.  Motion to Enforce Preliminary Injunction

Where defendant removed plaintiff as party to the FINRA arbitration and the court's order granting plaintiff's motion for preliminary injunction does not specifically enjoin defendant from arbitrating against the other UBS entities, defendant is not in violation of the court's preliminary injunction order.  Therefore, the court denies plaintiff's motion to enforce preliminary injunction.

Plaintiff argues that the court's preliminary injunction encompasses claims against all UBS entities, where the court stated in its July 21, 2016 order: "the court refers to the security's underwriter and issuer as 'plaintiff.' " (DE 32 at 3, n.2).  However, in its July 25, 2016 order, the court declined to address whether defendant was customer of UBS AG or UBS Securities, on the basis that, at that time, defendant had not attempted to arbitrate any claims against those entities.  Since the other UBS entities did not appear and join in plaintiff's initial motion for preliminary injunction and nothing in the court's order suggests that the preliminary injunction applies with equal force to all other UBS entities, the court rejects plaintiff's argument.

4

Nevertheless, where plaintiff and the other UBS entities seek in the alternative an expanded preliminary injunction, prohibiting defendant from arbitrating against UBS Securities and the other UBS entities, the motion may be granted on the same basis as the current injunction, as set forth below, provided that the other UBS entities are joined into this action.

Federal Rules of Civil Procedure 19 and 21 allow a court to join parties to an action. Rule 19 provides that a person must be joined as a party if:

> (A) in that person's absence the court cannot accord complete relief among the parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in that person's absence may: (I) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). Rule 21 authorizes a district court to add a party at any stage of litigation on such terms as are just. See Fed. R. Civ. P. 21. Under circumstances of this case, involving multiple related corporate entities named in ongoing arbitration proceedings and docket filings, in light of the court's prior orders, the court on its own initiative joins the other UBS entities as plaintiffs to this action. Accordingly, the clerk is directed to add UBS Securities, UBS AG, and UBS Group as plaintiffs to this action.

To obtain preliminary injunction, a plaintiff must establish: 1) that it is likely to succeed on the merits; 2) that it is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in its favor; and 4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Here, the other UBS entities, UBS AG, UBS Group, and UBS Securities, move with plaintiff to enjoin defendant from pursuing FINRA arbitration against them. Together, these entities argue that preliminary injunction is proper because like plaintiff, the other UBS entities do not have an

written arbitration agreement with defendant and defendant is not a customer of any of these entities.[5] The court agrees.

First, the other UBS entities are likely to succeed on the merits. The lynchpin of the other UBS entities' claims is whether defendant is a "customer" of any one of them. Generally, a "customer" is "one, not a broker or dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities insofar as those activities are covered by FINRA's regulation, namely the activities of investment banking and the securities business." UBS Fin. Servs. Inc., v. Carilion Clinic, 706 F.3d 319, 325 (4th Cir. 2013). However, not just any purchase of commodities or services will suffice. A purchase must establish a "direct relationship" with the FINRA member; an indirect or attenuated relationship is insufficient. See Raymond James Fin. Servs., Inc., v. Cary, 709 F.3d 382, 387 (4th Cir. 2013); SunTrust Banks, Inc., v. Turnberry Capital Mgmt. LP, 945 F. Supp. 2d 415, 424–25 (S.D.N.Y. 2013). Furthermore, even where commodities and services are purchased, the purchaser will not be considered a "customer" unless FINRA and its members reasonably would expect that result. See Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 171 (2d Cir. 2011); see also Raymond James, 709 F.3d at 386. For an individual investor to successfully claim his status as a FINRA member's "customer," he must purchase goods or services directly from a FINRA member. See Raymond James, 709 F.3d at 387.

Defendant has not established a direct contractual or transactional relationship with UBS Securities, or any of the other UBS entities, for the purpose of purchasing any good or service.

---

[5]Previously, the court declined to decide whether defendant is a "customer" of UBS AG, UBS Group, and UBS Securities. (See DE 42).

"[D]efendant's only 'direct' interaction was with Schwab, his broker." UBS Fin. Servs,. Inc., v. Zimmerman, No. 5:16-CV-155-FL, 2016 WL 3546537, at *5 (E.D.N.C. June 21, 2016).

The underwriting services provided by UBS Securities and the other alleged services provided by the other UBS entities creates only an attenuated connection between defendant and those entities. See Morgan Keegan, 706 F.3d at 567 (finding that purchasing shares in a mutual fund underwritten and issued by a FINRA member is insufficient to create a customer relationship when the shares were purchased through a third-party). But see Carilon Clinic, 706 F.3d at 327–28 (finding that purchasing underwriting services from a FINRA member prior to the issuance of a bond was sufficient to create a customer relationship).[6] First, Defendant never requested or purchased any service. Defendant purchased the CEFL security from Schwab. (DE 1 ¶ 8; DE 22 at 23–24) ("Defendant admits . . . that he purchased the UBS security identified as 'UBS's ETN CEFL' from Schwab."). Although, as underwriter, UBS Securities provides a service to investors, defendant did not directly purchase that service. (DE 22 at 23–24). Rather, defendant purchased that service indirectly, as a collateral consequence of purchasing the CEFL security. (Id.).

Second, plaintiff did not pay UBS Securities or any of the other UBS entities for the leverage they may have provided him. Instead, defendant's payments were garnished from the monthly distributions provided to him. (Id.). Thus, defendant failed to take any affirmative steps to purchase a "service" from any of the other UBS entities. For these reasons, defendant is not a customer of any of the other UBS entities. See Morgan Keegan, 706 F.3d at 564, 567 (rejecting the idea that the purchase of a security underwritten and issued by a FINRA member through a third party placed the

---

[6]Carilion Clinic is distinguishable from the present case because here defendant did not directly purchase underwriting services from UBS Securities.

7

investor in the relation of a "customer" to the FINRA member). Since defendant is not a customer of UBS Securities or any other UBS entity, defendant cannot compel arbitration against those entities.

Based on the foregoing, UBS Securities and the other UBS entities have shown a likelihood of success on the merits. With regard to the remaining three preliminary injunction factors, the other UBS entities have likewise carried their burden. These entities have established that they are likely to suffer irreparable harm in the absence of preliminary relief, by being forced to participate in arbitration. See Zimmerman, 2016 WL 3546537, at *6 (quoting Morgan Keegan & Co. v. Louise Silverman Trust, No. 11-2533, 2012 WL 113400, *5 (D. Md. Jan. 12, 2012), aff'd sub nom., 706 F.3d 563 (4th Cir. 2013) (collecting cases) ("[T]he harm suffered by an [entity] who is forced to arbitrate claims it did not agree to arbitrate is per se irreparable because it forces an individual to expend resources it cannot later recover.")). Further, the balance of equities tips in favor of injunction where defendant is not a "customer" of any of the other UBS entities. See Zimmerman, 2016 WL 3546537, at *6 (citing Sagepoint Fin., Inc. v. Small, No. 15-CV-571, 2015 WL 2354330, at *6 (E.D.N.Y. May 15, 2015)). Lastly, public interest favors injunction, where, as discussed above, plaintiff has no right to compel arbitration against any of the other UBS entities. Therefore, to the extent plaintiff and the other UBS entities seek preliminary injunction prohibiting defendant from pursuing arbitration against the other UBS entities, plaintiff's motion is granted.

B. Motion to Strike

Defendant moves to strike plaintiff's complaint, motion to enforce preliminary injunction, and various related responsive briefings, pursuant to Rule 12(f).[7] Under Rule 12(f), a district court may, on motion of a party or on its own initiative, strike from a pleading an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings, Inc., v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotations omitted). Therefore, "motions to strike are rather strictly considered and have often been denied even when . . . within the provisions of Rule 12(f) where there is no showing of prejudicial harm to the moving party." Godfredson v. JBC Legal Group, P.C., 387 F. Supp. 2d 543, 547 (E.D.N.C. 2005).

In his various motions to strike, defendant requests that the court strike plaintiff's complaint, motion to enforce preliminary injunction, and various other responsive briefings, on the basis that plaintiff has "failed to provide a legal foundation for its [c]omplaint." (DE 60 at 1; 62 at 2). Defendant also suggests that the filings are fraudulent, and "contain[] not one word of probative value or substance." (DE 64 at 2). As discussed more throughly in the court's prior orders, plaintiff's complaint does have a sufficient legal foundation. (See e.g., DE 32). Furthermore, aside from his conclusory allegations, defendant does not provide any support to justify striking the listed documents. Accordingly, defendant's motions to strike are denied.

---

[7] Defendant also moves to strike under Rule 9(b). Contrary to defendant's suggestion, Rule 9(b) does not give the court authority to strike the materials requested.

9

To the extent defendant's motions seek reconsideration of the court's order granting plaintiff's motion for preliminary injunction, such request is also denied.[8] Unless certified as final, "any order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "[A] district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003).[9] "The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court," and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders." Saint Annes Dev. Co. v. Trabich, 443 F. App'x 829, 832 (4th Cir. 2011) (quoting Am. Canoe, 326 F.3d at 514–15); see also Fayetteville Inv'rs v. Commercial Builders Inc., 936 F.2d 1462, 1473 (4th Cir.1991) (stating that interlocutory orders "are left within the plenary power of the [c]ourt that rendered them to afford such relief from them as justice requires").

---

[8] Defendant's request for reconsideration also looks, at least in part, like a sur-reply to plaintiff's motion to enforce preliminary injunction. To this extent, and for the reasons discussed more throughly herein, the court grants in part plaintiff's motion.

[9] The court previously gave no notice of its intent to enter final judgment following the June 17, 2016, hearing. Failure to give such notice generally forecloses the court's ability to enter final judgment upon disposition of a motion for preliminary injunction. See aaiPharma Inc., v. Thompson, 296 F.3d 227, 234–35 (4th Cir. 2002). The Fourth Circuit has recognized an exception to that general rule where "special circumstances" exist. Id. This case does not present any "special circumstance." Specifically, where defendant has requested a jury trial, he has not indicated that he "would welcome a decision on the merits from this court." Id. (internal quotations omitted).

"[D]octrines such as law of the case . . . have evolved as means of guiding that discretion." Am. Canone, 326 F.3d at 515 (internal citations omitted). According to the law of the case doctrine, "earlier decisions of a court become the law of the case and must be followed unless '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.' " Id. (quoting Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988)).

Defendant suggests that the court's prior order was erroneous in several respects. Specifically, defendant contends that 1) Fourth Circuit precedent favors denying plaintiff's motion for preliminary injunction; 2) he is a customer of plaintiff and other UBS entities, specifically UBS Securities, and 3) the court's order was based on fraudulent allegations by plaintiff. Defendant's contentions, however, merely reiterate his previously rejected arguments. "A motion for reconsideration is not an appropriate forum to relitigate issues previously decided." See UBS Fin Servs., Inc., v. Zimmerman, No. 5:16-CV-155-FL, 2016 WL 3983454, *1 (E.D.N.C. July 25, 2016). Where the court's prior decisions to grant plaintiff's motion for preliminary injunction and deny defendant's first motion for reconsideration are not clearly erroneous, the court denies defendant's request to again reconsider its prior order granting preliminary injunction in favor of plaintiff. See Am. Canone, 326 F.3d at 515

C. Motion for Partial Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings, "[a]fter the pleadings are closed– but early enough not to delay trial." Fed. R. Civ. Pro. 12(c). "The standard for Rule 12(c) motions is the same as applied to Rule 12(b)(6) motions, which should only

11

be granted if, 'accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.' " Priority Auto Group, Inc., v. Ford Motor Company, 757 F.3d 137, 139 (4th Cir. 2014).

Defendant moves for partial judgment on the pleadings on the basis that plaintiff lacks standing to seek preliminary injunction against him. Specifically, defendant contends that plaintiff lacks standing where it denies having a relationship with him. However, contrary to defendant's suggestion, plaintiff does have standing on the basis that its injury in being forced to participate in arbitration. To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc., v. Laidlaw Envtl. Servs., 528 U.S. 167, 180–81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Where the court found previously that plaintiff is likely to succeed on the merits of its claim and will suffer irreparable harm in the absence of preliminary relief, defendant's motion is denied as moot. To the extent defendant's motion is construed as motion for reconsideration of the court's order granting preliminary injunction, the court denies the motion for reasons explained more throughly herein.

In sum plaintiff's motion to enforce preliminary injunction is denied in part and granted in part. Where plaintiff seeks to enforce the preliminary injunction, the motion is denied. Under circumstances presented, the court joins the other UBS entities as plaintiffs to this action. Accordingly, where plaintiff seeks, in the alternative, preliminary injunction prohibiting defendant

12

from arbitrating his claims against UBS Securities and the other UBS entities, the motion is granted. Defendant's motions to strike and motion for partial judgment on the pleadings are also denied. Lastly, the court denies defendant's motion for miscellaneous relief as moot. Where previously the court granted plaintiff's motion to dismiss defendant's counterclaims, which the other UBS entities joined, the court denies defendant's request to add such entities as third party counterclaim defendants is for the same reasons provided in the court's prior order. Finally, defendant's request to expedite the proceedings is denied as moot.

## CONCLUSION

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART plaintiff's motion to enforce preliminary injunction and alternative motion as set forth herein. (DE 51). Where plaintiff seeks enforcement of the court's prior preliminary injunction order, plaintiff's motion is DENIED. Plaintiff's alternative motion to expand the court's prior preliminary injunction is GRANTED. Defendant is hereby ENJOINED from pursuing arbitration against UBS Securities and the other UBS entities. The clerk is DIRECTED to add UBS Securities, LLC, UBS AG and UBS Group as plaintiffs to this action. Plaintiffs are DIRECTED to file a notice of appearance and financial disclosure statement within 14 days of date of this order. Plaintiffs shall post within 14 days security in the total amount of $5,000.00.

Defendant's motions to strike and reconsider are DENIED. (DE 58, 60, 62, 64). Defendant's motions for partial judgment on the pleadings and miscellaneous relief are also DENIED. (DE 37, 41).

In aid of just and speedy determination of this matter, plaintiffs are DIRECTED to make motion, as appropriate, for bringing this matter to final judgment, within 21 days of the date of this

order. Defendant may file a response thereto within 21 days thereof, with any reply filed 14 days thereafter.

SO ORDERED, this the 28th day of March, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge